**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MARKETING AND MANAGEMENT INFORMATION, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 99-194C (Judge Bruggink) |

**JOINT STATUS REPORT**

In accordance with this Court's opinion of August 25, 2003, and Rule 16 and Appendix A of this Court's rules, Plaintiff, Marketing and Management Information, Inc. ("MMI"), and Defendant, the United States, now come before the Court and report as follows: The parties, after conferring with one another, regrettably have been unable to agree upon a joint proposal for further proceedings. Each therefore offers its own proposal for consideration by the Court.

**I. PROPOSAL OF PLAINTIFF MMI FOR FURTHER PROCEEDINGS.**

Although MMI expressly reserves the right, should further proceedings warrant such, to renew its argument that the services and data called for under the contract did not constitute Automatic Data Processing Equipment of sufficient value to fall within the Brooks Act, *see* Op at p. 16 n.10, it is MMI's position for present purposes that the this Court's grant of partial summary judgment in favor of MMI sufficiently and conclusively establishes liability on the part of Defense Commissary Agency (DeCA) for having breached the contract. Accordingly, all that remains is for this Court to adjudicate the damages attributable to DeCA's breach, and, in connection with that inquiry, affix the precise date of breach. *See* Op. at n.18.[1]

[1] MMI agrees with this Court that the precise date of breach is properly subject to further briefing, and respectfully submits that the issue should specifically be addressed in the parties' respective pre-trial memoranda of facts and law. Although it is beyond the scope of the present

Today marks the seven-year anniversary of the date on which DeCA officially canceled the solicitation at issue, resulting in the dismissal of MMI's appeal to the Federal Circuit. *See id*. at 5. MMI submitted its certified claim for damages to DeCA over five years ago and filed the instant suit in this Court over three-and-a-half years ago. *See id*. at 6. It is only just and appropriate at this point that the parties turn with dispatch to resolving the remaining damages questions. MMI believes that the relevant disputed facts can, subject to this Court's scheduling constraints, be readily and expeditiously resolved by way of what MMI believes would be a 5 to 7 day trial in May of 2004, in accordance with the schedule proposed below (the dates discussed below are illustrative, and are predicated on the assumption that an order is entered this day, September 30, 2003):

1. Once this Court enters an order governing further proceedings, the parties would be allowed a period of four months in which to undertake additional factual discovery regarding damages, and a period of five months in which to undertake discovery specifically with respect to experts; assuming this Court enters such an order on Tuesday, September 30, factual discovery would then close on January 30, 2004, and expert discovery would close on March 1, 2004. The parties have previously had several months in which to conduct discovery on damages, and will simply need to update and revisit their efforts in light of various recent developments and additional information that has been obtained, calculating damages from various dates on which this Court might conclude the breach occurred. Four months of fact discovery should adequately provide the appropriate opportunity. Over the course of those four months, the parties could also

---

filing to discuss in detail the parameters of this issue, MMI notes that it seems beyond dispute that the breach necessarily occurred *no later* than September 30, 1996, when DeCA officially canceled the solicitation; DeCA itself has taken the position that the Federal Circuit's subsequent dismissal of MMI's appeal reflected its "termination for convenience" as of that date, *see* Op. at 5-6, which termination this Court has now held was in breach of DeCA's contractual obligations.

initiate any discovery with respect to experts, including the preparation and exchange of expert reports, and the depositions of experts; and an additional month of discovery would further permit the preparation and exchange, if necessary, of an expert rebuttal report. In particular,

a. Plaintiff MMI would provide any expert report no later than 10 weeks into discovery, on or approximately December 15, 2003.

b. Defendant DeCA would provide any expert report no later than six weeks thereafter, on or approximately January 26, 2004.

c. MMI would provide any expert rebuttal report no later than three weeks thereafter, on or approximately February 16, 2004.[2]

Depositions of the relevant experts would be required to be completed at least seven calendar days before the date on which the next expert report is due (*e.g.*, depositions of MMI's expert(s) must be completed at least 7 days before DeCA's expert reports are due).

2. After the close of all discovery, on or approximately March 1, 2004, the parties would exchange their initial lists of witnesses and exhibits, as contemplated by Appendix A ¶ 13.[3]

3. Two weeks thereafter, on or approximately March 15, 2004, MMI would file its memorandum of facts and law (addressing, *inter alia*, the correct date of DeCA's breach for pur-

---

[2] MMI notes that, although the Government herein faults MMI's proposal for failing to provide eight weeks between the exchange of expert reports, the *Government itself* proposed on Friday, September 26, that a six-week period should be allotted, and MMI simply incorporated that into its revised proposed schedule. Thus, the nub of the Government's complaint that MMI's "proposed expert discovery schedule fails to give the Government adequate time" to prepare its expert report is that the task will now require more time than the Government initially envisioned.

[3] In light of the discrete nature of the damages question and the advanced stage of the proceedings, MMI believes it would be appropriate, as suggested by this Court, to arrive at a schedule for further proceedings at this time and thereby dispense with the post-discovery conference otherwise contemplated by Appendix A ¶11.

poses of calculating damages incurred by MMI), as contemplated by Appendix A ¶14(a), and its final lists of witnesses and exhibits for trial, as contemplated by Appendix A ¶¶15-16.

4. Four weeks thereafter, on or approximately April 12, 2004, DeCA would file its memorandum of facts and law (addressing, *inter alia*, the correct date of DeCA's breach for purposes of calculating damages incurred by MMI), as contemplated by Appendix A ¶14(b), and its final list of witnesses and exhibits for trial, as contemplated by Appendix A ¶¶15-16.

5. Ten days thereafter, on or approximately April 22, 2004, both parties would file any motions in limine regarding evidence to be adduced at trial.

6. Seven days thereafter, on or approximately April 29, 2004, both parties would file their responses to any motions in limine.

7. Five days thereafter, on or approximately May 4, 2004, both parties would file their replies in support of any motions in limine.

8. Seven days thereafter, on or approximately May 11, 2004, the parties would file their agreed stipulations of law and fact, as contemplated by Appendix A ¶17.

9. Three days thereafter, on or approximately May 14, 2004, the pre-trial conference would be held, as contemplated by Rule 16(d).

10. Trial would commence the following week of May 17-May 21, 2004.

MMI notes that the Government proposes to interject an additional round of summary judgment briefing in advance of commencing expert discovery regarding damages. The consequence of that approach would be substantially and unreasonably to delay the parties' readiness for trial by several months. MMI respectfully submits that such delay is unwarranted and ill-advised in several respects. First, the parties' have already had the opportunity to brief, and the Court has adjudicated, the legal questions associated with DeCA's liability for breaching the

contract; the remaining questions before the Court relate specifically to damages, are quintessentially factual in nature, and therefore are properly resolved in the context of a trial and the parties' pretrial memoranda of facts and law, just as Appendix A ¶ 14 contemplates. Indeed, the issues to which the Government proposes to devote summary judgment briefing turn on facts that would be properly illuminated only upon completion of fact and expert discovery. Moreover, in the event that the Court concludes that certain discrete questions associated with damages may be resolved without the benefit of a trial, the schedule proposed by MMI, according to which the parties' pretrial memoranda would be submitted on approximately April 12, 2004, over a month before trial, would provide the Court with adequate opportunity to adjudicate those questions in advance of trial, without recourse to yet another round of briefing. Finally, it is MMI's position that certain issues the Government claims warrant summary judgment briefing are variously without merit and/or contrary to this Court's grant of partial summary judgment in favor of MMI; devoting over two months of separate, additional briefing to them would serve merely to delay and complicate these proceedings at the expense of the Court and the parties.

MMI would be happy, should the Court so desire, to participate in a telephonic or in-person status conference for the purpose of elaborating upon any aspect of the proposal outlined above.

## II. PROPOSAL OF DEFENDANT, THE UNITED STATES, FOR FURTHER PROCEEDINGS

Defendant proposes the following schedule for further proceedings in this case. Defendant agrees with MMI that the Court's schedule should provide for the efficient and fair disposition of this matter. Defendant disagrees with two important matters upon which plaintiff's schedule is premised.

First, as the Court states on page 18 of its August 25, 2003 opinion, neither the parties, nor the Court has addressed the issue of when the breach occurred. The Court can and should resolve this and several other important legal issues prior to launching into pretrial filings and the trial of this matter. The parties should file cross-motions for summary judgment on the following issues, with plaintiff filing its brief on or before mid-November 2003: (1) When did the breach occur and what impact does that date have upon the calculation of damages;[4] (2) Whether plaintiff's claims for lost profits are too remote or speculative to permit their recovery; (3) Whether plaintiff is entitled to recover lost profits for any years beyond the initial three-year contract period; and (4) Whether, in informing DeCA prior to finalization of the solicitation, on November 15, 1994, that the solicitation might be perceived to be a solicitation of Automatic Data Processing Equipment subject to the Brooks Act, plaintiff assumed the risk that the Contract would be declared void *ab initio* and, therefore, recover should be denied. If these matters can be fully briefed and disposed of prior to the completion of expert discovery, considerable time and expense will be saved with respect to expert discovery, the remaining pretrial proceedings, and the trial of this case. Furthermore, the resolution of these legal issues early on in the pretrial proceedings could foster the resolution of this action prior to trial, either through the dismissal of plaintiff's claims or through settlement.

Second, plaintiff's proposed expert discovery schedule fails to give the Government adequate time for the Government both to depose plaintiff's expert and for the Government's pro-

[4] In footnote 1 of plaintiff's proposal, plaintiff states that the breach "necessarily occurred *no later* than September 30, 1996," when DeCA cancelled its solicitation DECA01-94-R-0068. Plaintiff's suggestion makes no sense. The Government could not have breached Contract DECA 01-96-S-0001 (the Contract) on September 30, 1996, because the General Services Administration Board of Contract Appeals (GSBCA) declared the Contract void *ab initio* on February 23, 1996, and that decision had full force and effect until the United States Court of Appeals for the Federal Circuit vacated the GSBCA's decision on May 19, 1998. It is in the parties' and the Court's best interest to brief this issue as well as the potential ramification that the issue has upon the calculation of damages as soon as possible.

posed expert to complete his expert report. Prior to submitting its latest proposed schedule, defendant's counsel consulted again with defendant's proposed expert who has represented that he will need between three and four weeks to assist defendant's counsel in the preparation for the deposition of plaintiff's expert after receiving plaintiff's expert report and that he will need four weeks after that deposition to prepare his expert report. In addition, plaintiff's proposed expert discovery does not give adequate time for the Government to depose plaintiff's expert following the submission of plaintiff's rebuttal expert report. Defendant requests that the Court provide the Government with at least three weeks to depose plaintiff's expert following the submission of plaintiff's rebuttal report.

1. **Discovery on damages begins: October 1, 2003**

2. **Cross-Motions for Summary Judgment**:

   **November 14, 2003 – Plaintiff files summary judgment brief**

   **December 16, 2003 – Defendant files cross-motion for summary judgment**

   **January 6, 2004 – Plaintiff files reply brief**

   **January 23, 2004 – Defendant files reply brief**

3. **Plaintiff submits to defendant its expert report and/or final damages calculation with all supporting documentation**:

   **February 27, 2004, or four weeks after the court issues its decision on the parties' cross-motions**

4. **Defendant deposes plaintiff's expert(s):**

   **March 19, 2004, or three weeks after plaintiff submits its expert report to defendant**

5. **Defendant submits to plaintiff its expert report in response to plaintiff's calculation of damages:**

   **April 23, 2004, or eight weeks after plaintiff submits its expert report or final damages calculation to defendant**

6. **Plaintiff's rebuttal report (if plaintiff so desires):**

   **May 14, 2004, or three weeks after defendant submits its expert report to plaintiff**

7. **All discovery is closed**:

   **May 28, 2004, or three weeks after plaintiff submits its final rebuttal report (or three weeks after the defendant submits its final expert report – whichever is later)**

8. **Appendix A, ¶ 13 - Meeting of Counsel** –

   **June 18, 2004, or three weeks after discovery is closed**

9. **Appendix A, ¶ 14(a), 15(a), 16 – Plaintiff files its pretrial filings and submits its proposed stipulations to defendant -**

   **July 9, 2003, or three weeks after meeting of counsel**

10. **Appendix A, ¶ 14(b), 15(b), 16 – Defendant files its pretrial filings** -

    **August 6, 2003, or four weeks after plaintiff files its pretrial filings**

11. **Apprendix A, ¶ 17 - The parties file Joint Stipulations**

    **August 10, 2004, or one to two weeks after defendant's pretrial filings**

12. **Pretrial Conference** –

    **September 8, 2004, or four to five weeks after defendant files its pretrial filings (not in August 2004)**

13. **Trial** – **Fall 2004**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ David M. Cohen
DAVID M. COHEN
Director

/s/ Sheryl Floyd
SHERYL FLOYD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

*Of Counsel:*

THOMAS D. RATHGEB
ELLIOTT CLARK
Office of General Counsel
Defense Commissary Agency
Fort Lee, VA 23801-1800

September 30, 2003

Respectfully submitted,

/s/ Charles J. Cooper
CHARLES J. COOPER
Cooper & Kirk, PLLC
1500 K Street, NW, Suite 200
Washington, DC 20005
(202) 220-9600
*Counsel of Record for Plaintiff*

*Of Counsel*:
Vincent J. Colatriano
Derek Shaffer
Cooper & Kirk, PLLC
1500 K Street, NW, Suite 200
Washington, D.C. 20005
(202) 220-9600

## CERTIFICATE OF FILING

I hereby certify that on September 30, 2003, a copy of the foregoing Joint Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Sheryl L. Floyd