IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION

MARKETING AND MANAGEMENT
INFORMATION, INC.
Suite 710
4800 Montgomery Ave.
Bethesda, Maryland 20814

Plaintiff,

v.

THE UNITED STATES
DEPARTMENT OF DEFENSE,
William Perry, Secretary,
Room 3E880
The Pentagon
Washington, DC 20301

and

THE UNITED STATES DEFENSE
COMMISSARY AGENCY,
1300 E Avenue
Fort Lee, VA 23801-1800

Defendants.

FILED
SEP 18 1996
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Case No. 96-1309-A

**COMPLAINT FOR INJUNCTIVE**
**AND DECLARATORY RELIEF**

Plaintiff Marketing and Management Information, Inc. ("MMI") hereby alleges as follows:

1. MMI seeks to enjoin Defendants the U.S. Department of Defense ("DoD") and the Defense Commissary Agency ("DeCA") from conducting an illegal sale of point-of-sale

scanner data generated by DeCA, in contravention of the terms of sale for the data. The Defendants' actions are a violation of the terms of the spot-bid sale described in the License Agreement issued by DeCA on 23 May 1996; the Federal Property and Administrative Procedures Act of 1949 (the "Property Act"), 40 U.S.C. § 484 (1994); the Commissary Scanner Data Sales Act, 10 U.S.C. § 2487 (1994); and other applicable law.

## Parties

2. Plaintiff MMI, a privately-held company, is incorporated under the laws of the District of Columbia, and maintains its principal place of business at Suite 710, 4800 Montgomery Ave., Bethesda, Maryland 20814. MMI is engaged in the business of collecting, organizing, analyzing, and selling marketing data.

3. Defendants DoD and DeCA are executive agencies of the United States of America. DeCA operates the commissaries, Government-owned supermarkets located at military bases. DeCA is a component of DoD. It is headquartered at Ft. Lee, Virginia.

## Jurisdiction and Venue

4. This court has jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994); 28 U.S.C. § 1331 (federal question jurisdiction); and the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1994). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (e) (1994) in that a substantial part of the event or omissions giving rise to the claim herein occurred in this judicial district, and certain Defendants reside or do substantial business in this judicial district. Venue also is proper

pursuant to 5 U.S.C. § 703 (1994), in that this is an action of agencies of the United States.

5. If the award is not enjoined, then MMI will be irreparably harmed. If there is no injunction, the public interest will be irreparably harmed by the Defendants' illegal distribution of valuable Government property. An injunction will not harm DoD or third parties.

## Background

6. DeCA operates all commissary (grocery) stores on military installations both in the continental United States and overseas. Like all modern grocery stores, the commissaries generate sales data at their cash registers through the use of Universal Price Code ("UPC") scanners ("scanner data").

7. On 26 October 1995, DeCA awarded a contract to MMI, Contract No. DECA01-96-S-0001 (the "FY96 Contract"), under which MMI would process DeCA's scanner data and sell it to DeCA's vendors. Several disappointed offerors protested award of the FY96 Contract, in protests filed at the General Services Administration Board of Contract Appeals (the "GSBCA").[1] The GSBCA sustained the protests, on the sole basis that DeCA had not obtained proper approval (a Delegation of Procurement Authority ("DPA")) from DoD or the U.S. General Services Administration ("GSA") before making award to MMI. This decision is currently on appeal to the U.S. Court of Appeals for the Federal Circuit.

---

[1] The GSBCA's protest jurisdiction has since been repealed. National Defense Authorization Act of 1996, Pub. L. No. 104-106, § 5101, 110 Stat. 186, 679 (1996); 61 Fed. Reg. 39359 (1996).

8. By letter dated 18 April 1996, DeCA informed MMI that DeCA needed to disseminate its scanner data during the pendency of the appeal.

9. On 23 April 1996, DeCA informed MMI that DeCA was planning to sell its scanner data to persons accepting the terms of DeCA's license agreement, at the highest price bid by any of the offerors in an "spot bid" that DeCA would conduct.

10. By letters dated 8 May 1996 and 15 May 1996, DeCA confirmed to MMI that it would proceed in this manner.[2] These letters identified "the specific terms of the license to be sold." In both letters, the third license term was, "Raw data will be provided <u>on a monthly basis after payment is received</u>." (Emphasis added). By law, DeCA was required to set the same terms for all would-be licensees. On information and belief, DeCA did so.

11. MMI submitted its bid on time on 17 May 1996. By letter dated 23 May 1996, DeCA informed MMI that the spot bid sale had established that the price of the DeCA scanner data is $30,000 per month. DeCA telecopied the License Agreement Application to MMI. Paragraph 3 of the License Agreement states:

> Payment by money order, company check, certified check (if other than a company check is issued) or cashier's check made payable to "DFAS-CO" must be received at (by) the Defense Commissary Agency, Acquisition Business Unit, Equipment/Supply Division (RAE), 1300 E Avenue, Fort Lee, VA 23801-1800 before Data will be provided. <u>Beginning June 1996, if payment is not received by the 25th day of the month (or the next business day) following the month for which the data is to be provided, the subscription shall be considered canceled</u>.

---

[2] Specifically, DeCA stated that it intended to conduct a spot-bid sale of non-exclusive licenses for the scanner data in accordance with the terms of the Property Act and its applicable regulations. 41 C.F.R. Part 101-45 (1995).

Exhibit A (emphasis added). DeCA was required to set the same terms for all would-be licensees. On information and belief, DeCA did so. MMI executed the License Agreement Application on 23 May 1996.

12. In accordance with the terms of the License Agreement, in every month from May 1996 to the present, MMI has sent the required payment to DeCA by the 25th day of every month. On 25 June 1996, with only MMI having made the required payment, all other would-be subscriptions were, by force of law in accordance with Paragraph 3 of the License Agreement, "canceled."

13. On 8 July 1996, MMI informed DeCA that under the terms of the spot-bid sale, the data could not be bought retroactively. DeCA did not respond to this letter.

14. Until late July 1996, MMI was the only purchaser of DeCA's scanner data. On 29 August 1996, MMI learned that another company, Information Resources, Inc. ("IRI"), had purchased and received, in late July 1996, a copy of DeCA's scanner data for the month of April 1996. MMI contacted DeCA immediately, and reiterated that this purchase violated the terms of the spot-bid sale. Ignoring MMI's complaints, DeCA then sold the April 1996 data to A.C. Nielsen Co. ("Nielsen"), again in violation of the terms of the spot-bid sale.

15. On 10 September 1996, MMI asked DeCA not to conduct any more illegal sales until MMI had fully briefed the issue to DeCA and, if necessary, allowing MMI two days after DeCA's final decision to pursue its legal recourse (Exhibit B). By letter dated 11 September 1996 and postmarked 16 September 1996, DeCA rejected this course of action (Exhibit C).

16. On information and belief, DeCA intends to make further illegal sales. The recipients will then sell this illegally-acquired data to MMI's customers in lieu of data from MMI, injuring MMI.

17. DeCA's actions are not substantially justified. MMI has fewer than 500 employees and its net worth does not exceed $7 million. Therefore, MMI is entitled to the recovery of attorney's fees under the Equal Access to Justice Act. 28 U.S.C. § 2412 (1994).

**Count I**

(Violation of the Commissary Scanner Data Sales and Property Acts)

18. MMI incorporates by reference paragraphs 1 through 17 above.

19. The Commissary Scanner Data Sales Act, 10 U.S.C. § 2487 (1994), provides DoD the authority to sell scanner data generated by commissaries.

20. The Commissary Scanner Data Sales Act states that such sales may occur only in accordance with the terms of written agreements between DeCA and the purchasers, 10 U.S.C. § 2487(b) (1994).

21. The "written Agreement" for the spot-bid sale of DeCA's data under the Commissary Scanner Data Sales Act is the spot-bid sale. The spot-bid sale incorporates by reference the terms of the Property Act.

22. The sale of DeCA's April 1996 scanner data to IRI and Nielsen was in violation of the terms of the spot-bid sale and the Property Act. Any other sales during the term of the License Agreement to anyone but MMI will also be a violation of these terms and the

Property Act.

23. Accordingly, MMI is entitled to a declaration, under 28 U.S.C. § 2201 (1994), that the Defendants' actions described above violate the Commissary Scanner Data Sales and Property Acts and are void ab initio. MMI is also entitled to injunctive relief preventing any such violation of law.

**Count II**

(Violation of the Administrative Procedure Act)

24. MMI incorporates by reference paragraphs 1 through 23 above.

25. The APA requires the Court to hold unlawful any federal agency action found to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or
>
> (D) without observance of procedure required by law.

5 U.S.C. § 706(2) (1994).

26. The Commissary Scanner Data Sales Act provides that DeCA may enter into agreements for the distribution of DeCA's sales data. The License Agreement constitutes this Agreement for the terms of spot-bid sale. DeCA's sale of historical data to IRI and Nielsen, and threatened future sales, violate the spot-bid sale and the Property Act. DeCA's illegal sales are arbitrary and capricious, an abuse of discretion, a violation of law, and not

in observance of procedures required by law.

27. Accordingly, MMI is entitled to a declaration under 28 U.S.C. § 2201 (1994) that the Defendants' actions described above violate the APA and are void ab initio. MMI is also entitled to injunctive relief preventing any such violation of law.

**Request for Relief**

WHEREFORE, MMI respectfully requests that this Court enter a judgment for MMI and award to MMI the following relief:

(a) A preliminary and permanent injunction prohibiting Defendants, their employees, agents and others acting in concern therewith, from cooperating in, permitting, or proceeding with the sale or distribution of DeCA's scanner data in to anyone other than MMI;

(b) Attorney's fees in accordance with 28 U.S.C. § 2412 (1994);

(c) The costs of suit; and

(d) Such other relief as the Court may deem just and proper.

Respectfully Submitted,

James S. DelSordo
Virginia Bar No. 33940
Grayson & Associates
Suite 300
1568 Spring Hill Road
McLean, Virginia 22102
(703) 442-0327

Counsel for Plaintiff Marketing and Management Information, Inc.

# APPLICATION

Marketing and Management Information, Inc. (hereafter referred to as subscriber), hereby subscribes for a license to use the Defense Commissary Agency (DeCA) raw product movement data (hereinafter referred to as Data) generated by the front end cash register systems used in the commissaries operated by DeCA in the United States. The rate of payment for this subscription shall be $30,000 per month.

The license granted pursuant to this Application is subject to the following terms and conditions:

1. The DeCA retains all ownership, right, and title to the data itself.

2. Data subject to this license consists of a listing by individual commissary stores of the Universal Product Codes (UPC), unit price at the time of data download at the commissary, and number of units sold, by month of sale.

3. Payment by money order, company check, certified check (if other than a company check is issued) or cashier's check made payable to "DFAS-CO" must be received at (by) the Defense Commissary Agency, Acquisition Business Unit, Equipment/Supply Division (RAE), 1300 E Avenue, Fort Lee, VA 23801-1800 before Data will be provided. Beginning June 1996, if payment is not received by the 25th day of the month (or the next business day) following the month for which the data is to be provided, the subscription shall be considered canceled.

4. Firms receiving the Data from DeCA shall not release or sell that Data to any other person, entity or association.

5. Firms receiving Data shall not release or sell reports based on the Data which reflects units sold by individual stores to any person, entity or association other than interested manufacturers and suppliers of resale products.

6. Data will be provided in the medium requested below (8 mm tape; 1/4" cassette tape; or 9-track tape; all are available in either ASCII or EBCDIC) by the last day of the month following the month to which the Data pertains. DeCA's preferred transfer method is using UNIX cpio, tar or dd utilities.

7. Any misuse of the Data in violation of this license will constitute grounds for the immediate revocation of the license and cancellation of this subscription.

Unless the subscriber desires a shorter period, this subscription shall continue uninterrupted from April 1996 through the close of the month following the month of the resolution of the appeal of GSBCA 13466-P, 13469-P, and 13470-P.

Signature by an authorized official of the firm completing this subscription shall constitute the agreement by the firm to by bound by the terms and conditions specified in this Application.

Dated this 23rd day of May, 1996.

Patrick L. Flannery
President
[signature]
(Signature and Title of Authorized Official)

We desire the data in the See cover letter medium.

EXHIBIT A



** TOTAL PAGE.02 **

MAY 23 '96 16:33 301 718 7652

Alan M. Grayson and Associates
1568 Spring Hill Road, Suite 300
McLean, VA 22102
(703) 442-0327
(703) 442-8672 fax

*Alan M. Grayson, Esq.*
Member of the Bars of Virginia
and the District of Columbia

September 10, 1996

**BY TELECOPY**

Jay Manning, Esq.
Counsel
Defense Commisary Agency
fax (804) 734-8259

RE: **Scanner Data License Agreement**

Dear Mr. Manning:

As I indicated by telephone yesterday, there seems to be a disagreement between MMI and DeCA at this point about whether and when companies other than MMI can obtain post-April 1996 raw scanner data from DeCA, based upon paragraph 3 of the license application issued to MMI, and other relevant documents. This issue is very important to MMI, and could end up in court. It is my understanding that there are no requests for data from companies other than MMI now pending. Once the data is released, however, it is difficult to restrain its use. Therefore, I propose the following:

- DeCA establishes a deadline for the written submission of MMI's position on this issue. I suggest September 30, 1996, but any reasonable period is acceptable.
- DeCA gives us some idea of when it will respond -- perhaps by October 14, 1996 -- with DeCA able to extend this period unilaterally.
- DeCA will not release the raw scanner data to anyone else until at least forty-eight hours after we have received DeCA's final decision concerning the points in our written submission.

This arrangement satisfies the due process requirements of notice and the opportunity to be heard, is modeled on the "reverse FOIA" regulation (32 C.F.R. Part 286) governing the contested disclosure of Government records, and eliminates any need to involve a court (or the Justice Department) at this point. Basically, it gives us all a chance to think things



EXHIBIT
B

through carefully, and hear what the other side has to say, before our positions become set and final. I would very much appreciate DeCA's consent to this arrangement.

Please let me know whether DeCA can agree to this arrangement. Thank you.

Sincerely,

Alan Grayson

Alan M. Grayson, Esq.

DEFENSE COMMISSARY AGENCY
HEADQUARTERS
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

September 11, 1996

Alan M. Grayson, Esquire
Alan M. Grayson and Associates
1568 Spring Hill Road, Suite 300
McLean, VA 22102

09-17-96P04:44 RCVD

Dear Mr. Grayson:

I have reviewed your September 10, 1996 letter and believe the arrangement you have proposed to be unreasonable. DeCA cannot agree with your proposed arrangement.

Sincerely,

JAY P. MANNING
Deputy General Counsel
Commercial Law



EXHIBIT
C