COPY



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

x- - - - - - - - - - - - - - - - - - - - -x

MARKETING AND MANAGEMENT INFORMATION, INC.,

Plaintiff,

vs.

THE UNITED STATES DEPARTMENT OF DEFENSE, William Perry, Secretary, et al.,

Defendants.

x- - - - - - - - - - - - - - - - - - - - -x

CIVIL ACTION NO. 96-1309-a

Friday, October 25, 1996

Alexandria, Virginia

Transcript of motion proceedings in the above-captioned matter.

BEFORE:

The Honorable LEONIE M. BRINKEMA, Judge
United States District Court

APPEARANCES:

FOR THE PLAINTIFF:

JAMES S. DELSORDO, ESQ.
WAYNE HANSEN, ESQ.
1568 Spring Hill Road
Suite 300
McLean, Virginia 22102

DON McCOY, RMR
REGISTERED MERIT REPORTER
(703) 683-3668

APPEARANCES: (Continued)

FOR THE DEFENDANTS:

JAMES MACKLIN, ESQ.
UNITED STATES ATTORNEY'S OFFICE
2100 Jamieson Avenue.
Alexandria, Virginia 22314-5794

WILLIAM W. GOODRICH, JR., ESQ.
ARENT FOX KINTNER PLOTKIN & KAHN
1050 Connecticut Avenue, N.W.
Washington, D. C. 20036-5339

DREW MARROCCO, ESQ.
JOSEPH P. HORNYAK, ESQ.
SONNENSCHEIN NATH & ROSENTHAL
1301 K Street, N.W.
Suite 600, East Tower
Washington, D. C. 20005

C O N T E N T S

| WITNESS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| (None) | | | | |

P-R-O-C-E-E-D-I-N-G-S

THE CLERK: Civil Action No. 96-1309-A, Marketing and Management Information, Incorporated vs. United States Department of Defense and others.

THE COURT: Is everybody here? I know we are a little early, but I think you-all wanted to be accommodated first anyway.

MR. MACKLIN: Yes, Your Honor; I appreciate that. I'm James Macklin from the United States Attorney's Office.

THE COURT: All right.

MR. DELSORDO: Good morning, Your Honor; James DelSordo for the plaintiff, Marketing and Management Information.

THE COURT: Mr. DelSordo.

MR. DELSORDO: Wayne Hansen, a member of the Bar of Colorado, will be doing our presentation today.

THE COURT: All right, good morning.

MR. GOODRICH: Good morning, Your Honor; William Goodrich for the intervenor AC Nielsen Company.

THE COURT: You have actually formally intervened at this point?

MR. GOODRICH: Yes, we have, your Honor.

THE COURT: All right, Mr. Goodrich.

MR. MARROCCO: Good morning, Your Honor; Drew Marrocco for Information Resources, Incorporated,

Intervenor. I'm a member of the State Bar of Virginia.

I'm here to introduce Mr. Joseph Hornyak and move for his appearance. He is a member of the State Bar of Maryland and State Bar of the District of Columbia; and I am here to vouch for his character in this case.

THE COURT: Fine. Those motions will be granted.

Do we have admissions, too? Are there uncontested motions? We will take up the admissions just as soon as we finish this case. This is a little early, because some of the attorneys have to be elsewhere.

Before the Court today on this case are three motions: The Department of Defense and Defense Commissary Agency's motion for summary judgment, the intervenor AC Nielsen Company, Information Resources' motion for summary judgment, and the plaintiff's motion for summary judgment and permanent injunction, correct? All right.

MR. MARROCCO: Yes.

THE COURT: I have had a chance to read over the briefs and, of course, know this case fairly well, because I heard the temporary restraining order motions as well, so I don't need to hear anything repeated that's in the briefs.

But let me begin, and I think the most appropriate thing is to start with the plaintiff. Is there anything you-all want to add either to your affirmative brief or to your reply brief to the defendants' motion for summary

judgment?

MR. HANSEN: Yes, Your Honor I would like to --

THE COURT: (Interposing) Go up to the lectern, please, sir.

MR. HANSEN: Wayne Hansen.

THE COURT: Go ahead, Mr. Hansen.

MR. HANSEN: The question is essentially-one of a contract-interpretation sort of issue, and we brought out earlier our discussions of what we thought paragraph three meant, that is, the second sentence of paragraph three. That's the pertinent one relating to the requirement to meet the bid purchases by the 25th of June.

The important additional point I would like to make this morning very quickly, Your Honor, is also if you would examine paragraph seven of the license as well. Now, that paragraph seven says, "Any misuse of the data in violation of this license will constitutes grounds for the immediate revocation of the license and cancellation of the subscription."

Now, if the defendant and the intervenors' view is correct that this is really a smorgasbord kind of license that you can take this month, skip a month, go back retroactively and do what you want, then that meaning is inconsistent with paragraph seven, because if you misuse the data this month under paragraph seven, it's no problem for

the intervenors.

Next month you simply pay, renew your license, renew your subscription and continue to get the data. So, every violation under paragraph seven becomes a smorgasbord selection for the next month. That can't mean what that language says.

It says that the subscription is canceled. That means annulled. That means it's no longer in effect, and the same interpretation under paragraph seven ought to apply to the identical language under paragraph three: Subscription is canceled.

The opponent's contention would be no, we could do it just on any month, but that can't be the language. That can't be the interpretation of this language.

THE COURT: The problem the plaintiff has in this case, and this is somewhat a repeat of what we did during the past hearing, is that in order to claim that exclusive license is being granted, there's got to be affirmative, clear wording in an agreement that what is happening is this is an agreement for an exclusive license.

There is no language whatsoever in this contract that says that an exclusive license is being granted, and, in fact, and I don't want to use parol evidence, because I don't think it's necessary. I'm just reading the language of the contract itself. I understand, you know, you are

trying to read this into the contract, but it's just not there.

And the language is not at all unclear. It's simply subscription language. Now, paragraph seven, I don't think is a winning argument in my opinion, because, as I understand it, and I'm thinking this thing through quickly, all that is saying is that your subscription is canceled, and to the extent that the subscription gave you a license, the license is canceled. Seven doesn't even use the word "exclusive" license.

Unless the word "exclusive" license is used, you can have multiple licenses to multiple parties. There's nothing in the law that prohibits that.

I think you have to have the word "exclusive" there in the contract in order to be able to claim that that's what was happening, and there is nothing in this language that in any respect indicates that the failure to pay for one month forecloses a party from getting this data at some subsequent month as long as the payment is made by the 25th day of the next business day.

This is, as you say correctly, simply a matter of contract interpretation. I have read the contract itself. The cold contract itself without any parol evidence in my opinion simply does not support your position.

Now, if you go a step further and were to add the

parol evidence, it's a devastating picture for your client, because those two informational exchanges that occurred, and I think one was actually even elicited by your client, asking for what exactly was going on here, I think make it crystal clear that there was, in fact, no intent on the part of the Government to be granting an exclusive license in this respect.

I know you disagree with the Court's view, and reasonable minds can do so. That's part of the business. I just want to assure you that we spent real time looking at this language and thinking about it, but you have not been able to convince me. I'll give you one more minute.

I'm not letting the other side talk, because at this point they have won the motion, but is there anything else you want me to consider?

MR. HANSEN: Well, in these times of World Series, I'm sort of reminded of Yogi Berra's old comment, deja vu all over again. I would like to make the clear point: If the language granted by its language an exclusive jurisdiction, there would be no question about it; and I think, however, the Court is stopping short of what it is we think has happened.

While it may have started out as a nonexclusive license, and by the terms even of the documents themselves, which constitute, the three documents that constitute the

spot bid sale, you could say yes, it is a nonexclusive license.

What we are saying is that it became exclusive because of paragraph three and paragraph seven, that when all of the dust has settled, only our client had met the requirements for a spot bid to get the data, and so by operation of the intervenors' failing to take advantage of what they should have done, that is, purchased it by 25 June, there was no other qualified bidder in sight; and that's a common practice within all Government contracts.

And, as we say, the language when you just look at contract itself, those three documents plus the license, that language has to mean something.

The plaintiff would have you believe that that language just means pay your money, get the data. But that pay your money and get the data is contained in the first three documents and is contained in the first sentence of paragraph three.

So, the second sentence upon which we rely means something different. Otherwise, it wouldn't have been in there. The plaintiff, or, the intervenors and the defendants are just erasing that, saying it means nothing, and it's not pertinent to this case. We believe it is. We believe a construction of the document leads to the plaintiff's favor.

THE COURT: As I said, how I read this paragraph it's simply describing payment terms. If you want to get the data, you pay buy, what, the day after the 25th of each month. If you haven't paid by that, subscription is canceled.

What I think that is doing is putting people on clear notice: This is how you pay. If you haven't paid, you don't get it, and there's nothing in here that says, and then if down the road you wind up paying, you can go back and get it after the fact.

In fact, as I said, if you look at the parol evidence ahead of time, that I think is made quite clear. So we disagree.

You have certainly a right, as Judge Lewis used to say, to exercise Rule 95, and if you wish to take an appeal, go down to Richmond on Route 95. Hopefully, you won't have much traffic.

MR. HANSEN: Yes, ma'am.

THE COURT: And have another set of judges look at it. But, as I said, I think the language does not favor your position.

MR. HANSEN: Well, I hope a trip to Richmond wouldn't be the third strike for my client and for myself.

Your Honor, thank you for considering our arguments again. We do appreciate it.

THE COURT: All right. For the record, I have denied the plaintiff's motion for summary judgment. I am granting the defendants' and intervenors' motions for summary judgment, and that will end this litigation at this point. Thank you.

(Whereupon, the proceedings in the above-captioned matter were concluded.)

CERTIFICATE OF OFFICIAL REPORTER

COMMONWEALTH OF VIRGINIA )
) ss.
CITY OF ALEXANDRIA )

I, EDWARD DONOVAN McCOY, Registered Professional Reporter and Official Court Reporter for the United States District Court for the Eastern District of Virginia, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that I was authorized to report, and did so report in Stenotype, the foregoing proceedings;

THEREAFTER, my Stenotype notes were reduced to typewriting under my supervision; and I further certify that the pages herein numbered contain a true and correct

transcription of my Stenotype notes taken herein.

DONE and signed, this 4th day of November, 1996, in the City of Alexandria, Commonwealth of Virginia.

EDWARD DONOVAN McCOY, RPR
Official Court Reporter

* * *