**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARKETING AND MANAGEMENT INFORMATION, INC., Plaintiff, | ) | |
| v. | ) | No. 99-194C (Judge Bruggink) |
| THE UNITED STATES, Defendant. | ) | |

**<u>PLAINTIFF'S MOTION *IN LIMINE*</u>**

Charles J. Cooper
COOPER & KIRK, PLLC
1500 K Street, NW
Suite 200
Washington, D.C. 20005
(202) 220-9600
*Counsel of Record for Plaintiff*

*Of Counsel*:
Vincent J. Colatriano
Derek Shaffer
Nikki Chtaini
COOPER & KIRK, PLLC
1500 K Street, NW
Suite 200
Washington, D.C. 20005
(202) 220-9600

May 21, 2004

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT.......................................................................................................................3

I. THE CONTRACT WAS BREACHED ON APRIL 1, 1996, AND IN NO EVENT LATER THAN SEPTEMBER 30, 1996.........................................................3

A. DeCA Breached The Contract On April 1, 1996. ......................................................4

B. The Breach Could Not Have Occurred Any Later Than September 30, 1996..........7

C. The Breach Necessarily Occurred In Advance Of June 12, 1998. ............................8

II. THE CONTRACT WOULD HAVE RUN FOR A PERIOD OF FIVE YEARS. ............11

CONCLUSION...................................................................................................................13

## TABLE OF AUTHORITIES

**Cases** **Page**

*Alder Terrace, Inc. v. United States*, 39 Fed. Cl. 114 (1997) ....................5

*Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564 (Fed. Cir. 1993) .........5

*Cavanagh v. United States*, 12 Cl. Ct. 715 (1987) ....................4, 7

*Continental Collection & Disposal, Inc. v. United States*, 29 Fed. Cl. 644 (1993) ....................12

*Franconia Assocs. v. United States*, 536 U.S. 129 (2002) ....................4

*Hi-Shear Tech. Corp v. United States*, 55 Fed. Cl. 418 (2003) ....................11

*Marketing & Mgmt. Info., Inc. v. Beale*, Nos. 96-1270 & 97-1171, 1998 U.S. App. LEXIS 10199 (Fed. Cir. May 19, 1998) ....................7

*Marketing & Mgmt. Info., Inc. v. United States*, 57 Fed. Cl. 665 (2003) ....................3, 5, 7

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ....................9

*Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217 (1964) ....................4, 6, 10

*Prudential Ins. Co. v. United States*, 801 F.2d 1295 (Fed. Cir. 1986) ....................11

*Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 27 Fed. Cl. 275 (1992) .......10

*San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557 (Fed. Cir. 1997) ..........7

**Other**

RESTATEMENT (SECOND) OF CONTRACTS (1979) ....................4, 6

1 C. CORMAN, LIMITATIONS OF ACTIONS, § 6.1, p. 374 (1991) ....................10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARKETING AND MANAGEMENT INFORMATION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-194C (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE***

In accordance with this Court's scheduling order of October 30, 2003, and the amendments thereto, Plaintiff Marketing and Management Information, Inc. ("MMI") hereby respectfully submits this Motion *in Limine*, addressing the correct date of breach and contract period for purposes of measuring damages at the upcoming trial in this matter. As explained below, the contract is properly deemed to have been breached on April 1, 1996, when the extension of MMI's prior contract expired and DeCA failed to perform its obligations under the contract at issue. In any event, the contract cannot plausibly be deemed to have been breached any later than September 30, 1996, when DeCA formally announced that it was canceling the solicitation. Damages should be measured over a five-year period (the three-year base period plus two option years) from the date of breach based upon proof that DeCA would, absent its illegal decision to breach, have opted to renew the contract for each of the two option years. This motion will discuss, first, the correct date of breach and, second, the term of the contract.

**PRELIMINARY STATEMENT**

The salient facts are well set out in this Court's decision of August 25, 2003, granting

summary judgment in favor of Plaintiff on liability and granting in part and denying in part the Government's cross-motion:

> DCA issued request for proposal ("RFP") DCA01-94-R-0068 on June 1, 1995 for a sales contract pursuant to which DCA would release product movement sales data from its commissaries to the contractor in exchange for a share in the revenue generated by sale of that information and for "Analytical Support Services for Category Management." . . .
>
> The RFP provided for award to a single contractor, who would have the right to process product movement data from the commissaries operated by DCA. The RFP called for a base term of three years with two option years at the election of DCA. . . .
>
> . . . .
>
> . . . DCA awarded the contract to MMI on October 26, 1995.
>
> On November 6, 1995 Nielsen[, a rival bidder,] filed a protest at the General Services Administration Board of Contract Appeals ("GSBCA") challenging the award to MMI. IRI and MSA intervened to support the protest. On November 14, 1995, the contracting officer issued a stop work order. MMI was ordered to cease all work "for a period not to exceed 90 calendar days . . . or until this order is cancelled by the Contracting Officer." The prior existing contract for processing raw scanner data was extended from December 31, 1995 to March 31, 1996.
>
> . . . On February 23, 1996 the GSBCA held that the contract was . . . void *ab initio* because it was subject to, but did not comply with, the Brooks Act. DCA was directed to reassess the procurement in accordance with the Brooks Act and appropriate regulations.
>
> MMI appealed the GSBCA's decision to the Federal Circuit . . . . During the pendency of that appeal, on September 30, 1996, DCA issued Amendment 0002 to the RFP cancelling the solicitation. It offered the following rationale: "based on the current and projected needs of the agency, it has been determined that the requirements set forth in the solicitation no longer adequately describe the needs of the agency. This solicitation is hereby cancelled in its entirety." The protestors who had been successful at the GSBCA then moved to dimiss MMI's appeal. On May 19, 1998 the Federal Circuit dismissed the appeal as moot, simultaneously vacating GSBCA's decision. *Marketing & Mgmt. Info. v. Beale*, No. 96-1270, 1998 U.S. App. LEXIS 10199 (May 19, 1998). . . .
>
> . . . .

> On June 12, 1998 MMI sent a letter to the contracting officer, expressing its desire to perform the contract as awarded. MMI explained that, because the Federal Circuit had vacated the GSBCA decision, there was no further bar to MMI performing on the contract. On June 12, however, DCA sent a "Notice of Termination" to MMI. DCA explained that it considered the Federal Circuit's dismissal to mean that DCA's September [3]0, 1996 cancellation of the solicitation effectively terminated the contract for the convenience of the government.

*Marketing & Mgmt. Info., Inc. v. United States*, 57 Fed. Cl. 665, 667-69 (2003).

Among other things, the Court held in its decision that "the government's termination [of the contract at issue] constituted a breach," *id*. at 675, and, while deeming it "understandable that [DeCA] might construe the Board's initial sustaining of the protest as tainting the contract," expressly "disagree[d]" with that construction. *Id*. at 676. At the same time, the Court reserved judgment as to "whether the breach occurred as of the date of the stop work order, Amendment 002, or the termination letter." *Id*. at 675. In fact, as explained below, the breach occurred on April 1, 1996, when DeCA failed to perform its obligations in accordance with the terms of the contract at issue. Additionally, the damages resulting from that breach should be calculated over a five-year period, through April 1, 2001.

## ARGUMENT

### I. THE CONTRACT WAS BREACHED ON APRIL 1, 1996, AND IN NO EVENT LATER THAN SEPTEMBER 30, 1996.

The contract at issue was, according to this Court, valid from its inception. As such, the breach occurred when performance came due under the contract and DeCA failed to perform, which was on April 1, 1996, the date MMI's incumbent contract expired and the contract at issue would properly have commenced. Assuming *arguendo*, however, that the breach did not occur on that date, it is inconceivable that it occurred any later than September 30, 1996, for the Government has already persuaded the Federal Circuit that DeCA on that date made its own unilateral decision to cancel the contract irrespective of its validity. It is utterly implausible and con-

trary to law to contend, as the Government now does, that DeCA did not breach until June 12, 1998, more than two years after MMI was entitled to performance under the contract, one-and-a-half years after DeCA cancelled the contract, and nearly a month after the Federal Circuit expressly held, in reliance upon the Government's representations, that any controversy over the GSBCA decision and the application of the Brooks Act was necessarily moot. Each of these points will be discussed in turn.

**A. DeCA Breached The Contract On April 1, 1996.**

The Restatement specifies the basic rule by which the date of breach must be determined: "When performance of a duty under a contract is due[,] any non-performance is a breach." RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1979); *see Franconia Assocs. v. United States*, 536 U.S. 129, 146 (2002) (quoting and applying same); *Cavanagh v. United States*, 12 Cl. Ct. 715, 717 (1987) ("A breach occurs at the time and place a party to the contract fails to perform."); *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964) ("where a claim is based upon a contractual obligation of the Government to pay money, the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract") (citation omitted). This rule governs the United States' " 'rights and duties' " under this contract just as it would those of " 'private individuals.' " *Franconia*, 536 U.S. at 141 (citation omitted).

Here, DeCA was obligated under the contract to supply MMI with commissary data on an exclusive basis. Because there is no dispute that DeCA failed to perform its obligations under the contract, this Court need simply determine when precisely those obligations came due. As discussed below, that date was April 1, 1996.[1] Though the GSBCA initially indicated that MMI

[1] MMI notes, as a technical matter, that DeCA typically would not have provided commissary data for the month of April until shortly after the end of the month, some time in early May. MMI uses the "April 1, 1996" formulation as a shorthand reference to the fact that the breach

had no valid contract obligating DeCA, that indication was in error as determined by this Court. *See* 57 Fed. Cl. at 674-75. Thus, the contract was indeed binding, and its terms control.

The legal proceedings that preceded this Court's adjudication of DeCA's contractual liability are themselves irrelevant to determining DeCA's obligations under the contract and the date on which they were breached. The Federal Circuit explained as much in *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564 (Fed. Cir. 1993). There, the Federal Circuit rejected the Tribe's argument that the statute of limitations had not run because various causes of action did not accrue until the Supreme Court specifically construed a particular statute as inadequate to fulfill the United States' obligations to the Tribe.

> The difficulty with the Tribe's argument, creative though it is, is that it is contrary to one of the fundamental premises of our legal system. The argument assumes that the adverse effect of the 1962 Act did not become operative against the Tribe – the Tribe was not damaged – until the Supreme Court some 25 years later so construed the Act. While the Supreme Court's pronouncement in 1986 might be relevant to fixing the time when the Tribe *subjectively* first knew what the Act meant, it is fundamental jurisprudence that the Act's *objective* meaning and effect were fixed when the Act was adopted. Any later judicial pronouncements simply explain, but do not create, the operative effect.

*Id*. at 1570. So too here with the legal status of this contract, as neither the GSBCA decision nor DeCA's subjective state of mind alters the fact that the contract was indeed binding and breached when DeCA failed to perform as specified in the contract. *See Alder Terrace, Inc. v. United States*, 39 Fed. Cl. 114, 120-21 (1997) ("Plaintiffs have mistakenly equated the accrual date of their breach of contract claims and the various dates they fully appreciated the damages therefrom . . . . The fact that plaintiffs might have been unaware of the potential degree of damages

---

occurred when DeCA failed to provide MMI with exclusive access to scanner data relating to April 1996 commissary sales.

until the district court's order is not probative, much less dispositive, of the actual accrual date of their cause of action flowing from an alleged breach of contract.").

The date on which MMI's incumbent contract expired and the new one would have become effective is April 1, 1996. Both the RFP and the contract in this case specify a three-year period of performance, with two additional option years, commencing "01 Jan 1996." Appendix to Plaintiff's Motion for Partial Summary Judgment filed Oct. 18, 2002 (hereinafter "Pl. App.") 86a, 130. This date was chosen by the parties because it was the one on which MMI's preexisting incumbent contract was set to expire and DeCA needed to ensure that the supply of scanner data would continue uninterrupted. In response to the protest proceedings, DeCA and MMI agreed to extend the term of MMI's incumbent contract to supply scanner data for an additional three months, through March 31, 1996, so as to leave the requisite services in place. *See* Pl. App. 385 (Hahn Dep. 95). The parties therefore naturally contemplated that the commencement date of the ensuing contract would likewise be pushed back by three months – to April 1, 1996 – in order to avoid any overlap in the terms of the contracts.

Under these circumstances, where "modification is fair and equitable in view of circumstances not anticipated by the parties when the contact was made," it is appropriate to treat the commencement of the new contract's term as having simply been delayed for three months. RESTATEMENT (SECOND) OF CONTRACTS § 89(a); *cf. Oceanic S.S. Co.*, 165 Ct. Cl. at 226 (explaining why, under the terms of a particular contract, it "was obviously not 'practicable' for the parties to have a 'final accounting' for the year 1947 – the one that is involved in the present litigation – 'soon' after the end of that year, since [the] contract . . . was not entered into by the parties

until September 28, 1951.").[2] As such, the correct date of commencement of DeCA's obligations under the contract, and of its breach of those obligations, is April 1, 1996. Measuring damages from that date is the only way properly "to award damages so as to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *Cavanagh*, 12 Cl. Ct. at 717 (citation omitted); *see San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997).

**B. The Breach Could Not Have Occurred Any Later Than September 30, 1996.**

In no event, however, can the date of DeCA's breach be fixed any later than September 30, 1996, when DeCA "issued Amendment 0002 to the RFP canceling the solicitation." 57 Fed. Cl. at 668. This Amendment, which by its terms "canceled [the solicitation] in its entirety," Pl. App. 275-76, amounted to a formal disavowal of whatever obligations DeCA might have under the contract. Indeed, the Amendment formed the basis of DeCA's mootness argument to the Federal Circuit

> that [DeCA's] intention is to terminate the contract for the convenience of the government, *and that the Brooks Act issue is now irrelevant because in no event will DeCA grant the contract or continue its performance*. DeCA states that its cancellation of the solicitation moots the question of whether the contract was initially properly solicited and awarded by DeCA.

*Marketing & Mgmt. Info., Inc. v. Beale*, Nos. 96-1270 & 97-1171, 1998 U.S. App. LEXIS 10199, at *3-*4 (Fed. Cir. May 19, 1998) (emphasis added). DeCA's argument, at bottom, was that the GSBCA decision was wholly beside the point because it had already made its own decision, by September 30, 1996, to cancel the contract without regard for its validity. The Federal Circuit dismissed MMI's appeal of the GSBCA decision as moot on precisely that basis. *Id*. at

[2] Alternatively, were the Court to hold that the term of the contract was insusceptible to modification, it would follow that the contract term commenced on January 1, 1996, whereas damages for breach began accruing on April 1, 1996.

*4-*6. There remains no room for doubt that the latest date on which DeCA's breach can be fixed is September 30, 1996.

**C. The Breach Necessarily Occurred In Advance Of June 12, 1998.**

MMI understands the Government nonetheless to contend that DeCA's breach did not occur until June 12, 1998, when DeCA expressly terminated the contract for convenience following the Federal Circuit's dismissal, on mootness grounds, of MMI's appeal from the GSBCA's protest decision. According to the Government's interrogatory responses:

> The breach of the Contract could not have occurred until after the time that the Federal Circuit vacated the GSBCA's decision in May of 1998, because the GSBCA declared the contract void *ab initio* in February 1996 and the Contract was not reinstated until the Federal Circuit vacated the GSBCA decision, in May 1998. In short, it was not possible for DeCA to breach a nonexistent contract.

Defendant's Response To Plaintiff's Fourth Set of Interrogatories and Fourth Request for Production of Documents, Response to Interrogatory 27, pp. 17-18 (attached hereto at Ex. 1). By this reasoning, the eighteen-month delay associated with the Federal Circuit's resolution of DeCA's argument that the appeal from the GSBCA decision was moot would itself operate to foreclose MMI from being made whole for DeCA's breach.

As explained above, such a position is thoroughly implausible in light of basic principles of contract law and the settled law of this case. But it also starkly contradicts the position the Government adopted before the Federal Circuit in order to achieve the result it then sought – namely, the dismissal of MMI's appeal on mootness grounds because DeCA *had already made its own independent decision, on September 30, 1996, to cancel the contract*.[3] Surely the Gov-

[3] Indeed, the Government's argument that the breach did not occur until June 12, 1998 is wholly irreconcilable with its previous position that MMI's appeal from the GSBCA was moot by the time the Federal Circuit dismissed it on May 19, 1998. If the Government were now correct that DeCA's breach did not occur until it purported to terminate the contract for convenience on June 12, 1998, several weeks *after* the Federal Circuit's decision, then it would necessarily follow that

ernment cannot, on the one hand, successfully persuade the Federal Circuit that MMI's appeal was indeed moot because it had previously disavowed the contract irrespective of any legal basis identified by the GSBCA, and, on the other, argue to *this* Court that it could not have breached the contract prior to June 12, 1998 because the GSBCA had purportedly (though incorrectly) found a legal basis for it to avoid its legal obligations. In fact, in light of the Federal Circuit's acceptance of the Government's argument that its September 30, 1996, cancellation of the solicitation effectively terminated the contract and mooted out any controversy regarding the "validity" of the contract under the Brooks Act, the Government should be judicially estopped from now citing the operation of the GSBCA decision as a basis for forestalling its breach and/or insisting that breach could not have occurred until it made a second (and, by definition, gratuitous) decision to terminate following the Federal Circuit's decision. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' ") (quoting *Pegram v. Herdich*, 530 U.S. 211, 227 n.8 (2000)).

Significantly, the Government's current attempt to attach independent and controlling significance to the June 12, 1998 termination notice also contradicts the very terms of the notice itself; that notice makes clear that it was the September 30, 1996 cancellation notice that was the operative event. As stated in DeCA's June 12, 1998 notice: "[The Federal Circuit's] decision recognized that as a matter of law, the agency's cancellation of the solicitation in September of

---

MMI's appeal was *not* moot at the time the Federal Circuit dismissed it in reliance upon the Government's representations. On May 19, 1998, a decision by the Federal Circuit reversing the GSBCA on the merits and declaring the contract valid would have established MMI's entitlement to performance at least from that time onward; yet the Government now contends that breach did not occur until *subsequently*, on June 12, meaning that damages for at least one month would have been in controversy when the Government successfully convinced the Federal Circuit to dismiss the case as moot.

1996 constituted a withdrawal of the contract. The effect of these actions was to terminate the contract for convenience." Pl. App. 280. Of course, the June 12, 1998 notice was entirely consistent with DeCA's mootness argument to the Federal Circuit – and utterly inconsistent with the Government's present argument – in recognizing that the September 30, 1996 cancellation amounted to a termination of the contract for convenience, without regard for whether the contract was or was not "void."

Furthermore, absurd consequences would result from the Government's position with respect to the date of breach. One is that the procedural course of the protest proceedings, rather than the operative terms of the contract, would control MMI's ability to recover for breach; by the Government's conception, so long as the GSBCA decision was in place, MMI would have lacked a cognizable cause of action for what this Court has deemed to be DeCA's clear breach of its contract with MMI. "A claim against the United States first accrues on the date when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Oceanic S.S. Co.*, 165 Ct. Cl. at 225 (citation omitted); *see also Richmond, Fredericksburg,& Potomac R.R. Co. v. United States*, 27 Fed. Cl. 275, 287 (1992) ("a contract claim accrues on the date of breach"); 1 C. CORMAN, LIMITATIONS OF ACTIONS, § 6.1, p. 374 (1991). In light of this Court's holding that the contract was indeed valid and binding from its inception, it would be exceedingly peculiar to suppose that DeCA's obligations under the contract and MMI's cause of action for breach were suspended merely because the GSBCA erroneously resolved the protest as it did. Another absurd consequence, given the Government's position that the contractual period, for purposes of damages, terminates on December 31, 1998, is that DeCA could have dispelled *any* liability merely by delaying the Federal Circuit decision for a period of additional months (as it did to a large extent when it reversed its position and aligned

itself with the protestors rather than MMI during the pendency of the appeal), or, better yet, simply by withholding its official letter terminating for convenience until January 1, 1999, after the date on which it now claims the contract expired.

Such absurdities are readily avoided by hewing to sound legal precepts and principles of contract law: as explained, the date of breach should be determined in reference to the terms of the contract and the parties' understanding (which the Government now ignores altogether), and not in reference to the course of the protest proceedings and the ultimately gratuitous statement by DeCA on June 12, 1998, almost two years after it had formally cancelled the contract, that it was terminating the same contract for convenience (which statement the Government now fixates upon). The actual date of breach is therefore April 1, 1996, or, at the latest, September 30, 1996; but the Government cannot possibly be correct that there was no breach before June 12, 1998.

## II. THE CONTRACT WOULD HAVE RUN FOR A PERIOD OF FIVE YEARS.

The record shows that DeCA would, absent its breach, have exercised its option to extend the contract for each of the two option years, such that the contract would have run for a total period of five years. Accordingly, MMI's damages should be calculated from April 1, 1996 through April 1, 2001.

The settled rule is that "foreseeability for consequential damages under government contract law is based upon what the parties contemplated as of the time the contract was made." *Prudential Ins. Co. v. United States*, 801 F.2d 1295, 1300 (Fed. Cir. 1986) (citation omitted). Though it is also true that an option to extend a contract "does not create a legal obligation on the part of the government to exercise the option" and that the " 'decision not to exercise th[e] option[] does not breach the contract,' " *Hi-Shear Tech. Corp v. United States*, 55 Fed. Cl. 418, 423

(2003) (citation omitted); *Continental Collection & Disposal, Inc. v. United States*, 29 Fed. Cl. 644, 651 (1993), MMI does not here contend that DeCA was bound by the options or that its failure to exercise them amounted to breach. Rather, MMI contends that loss of the option years was the foreseeable consequence of DeCA's breach because the evidence shows that DeCA otherwise intended to, and would have, exercised the options.

The evidence shows that DeCA would have exercised the option extensions with MMI had it not breached the contract. For one thing, MMI's preceding contracts with DeCA or its predecessor agencies had been extended for each of two option years. In addition, DeCA subsequently contracted with Information Resources, Inc. ("IRI") in 1999 to supply category management services of the same sort that MMI would have supplied in each of the option years. Indeed, Gary Duell, Manager of the Marketing Business Unit of DeCA, went so far as to declare that "[t]he timely accurate data available under [the IRI contract] is *critical* to the ability to negotiate contracts for brand name commercial items to be sold in commissaries." Pl. App. 714 (emphasis added); *see also* Pl. App. 710-15, 501-02 (Hahn Dep. 103-106).

This "critical" need for continual receipt of accurate data could be met only by MMI during the option years because MMI alone had the back data (prior year's data, recorded by month) that was essential to providing the uninterrupted trended information required under the contract. (Absent comparison with a prior year's data, current data is essentially useless for tracking trends and evaluating performance.) Therefore, it would have been essential to the interests of DeCA and its suppliers to extend the MMI contract for each of the option years in order to continue obtaining current and historical data that DeCA acknowledged were critical to its operation, which explains why DeCA and its predecessor agencies had extended the prior contracts. Thus, in the absence of the 1996 breach, DeCA would predictably have exercised its options consistent with

its need for category management services and the parties' initial expectations; and the contract foreseeably would have run for five years, which is the appropriate period for purposes of calculating MMI's damages. At the very least, the likelihood of the five-year term is an issue for trial.

**CONCLUSION**

For the foregoing reasons, MMI respectfully submits that April 1, 1996 is the date of breach, and that damages should be calculated over a five-year period from that date.

May 21, 2004

Respectfully submitted,

s/Charles J. Cooper___________

CHARLES J. COOPER
Cooper & Kirk, PLLC
1500 K Street, NW, Suite 200
Washington, D.C. 20005
(202) 220-9600
*Counsel of Record for Plaintiff*

*Of Counsel*:
Vincent J. Colatriano
Derek Shaffer
Nikki Chtaini
Cooper & Kirk, PLLC
1500 K Street, NW, Suite 200
Washington, D.C. 20005
(202) 220-9600