No. 99-194C
(Judge Eric G. Bruggink)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MARKETING AND MANAGEMENT INFORMATION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE*

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

SHERYL FLOYD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit,
8th Floor
Washington, D.C. 20530
Telephone: (202) 307-0282
Facsimile: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

THOMAS D. RATHGEB
ELLIOTT CLARK
Office of General Counsel
Defense Commissary Agency
Fort Lee, VA 23801-1800

JULY 8, 2004

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE . . . . . 1

ARGUMENT . . . . . 4

I. MMI Fails To Establish That DeCA Breached The Contract Prior To June 12, 1998 . . . . . 4

A. The Parties Were Required To Comply With The Board's Order Declaring The Contract Void *Ab Initio* . . . . . 5

B. No Breach Occurred On April 1, 1996 . . . . . 6

C. No Breach Occurred On September 30, 1996 . . . . . 8

D. No Breach Occurred Prior To June 12, 1998 . . . . . 9

E. The Doctrine Of Judicial Estoppel Does Not Apply Here . . . . . 10

F. A Ruling From The Court That The Breach Occurred On June 12, 1998 Does Not Result In Absurd Consequences . . . . . 14

III. MMI Fails To Establish That The Contract Would Have Run For Five Years . . . . . 16

CONCLUSION . . . . . 20

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**


A.C. Nielsen Co., et al. v. Defense Commissary Agency,
1996-1 B.C.A ¶28,253, G.S.B.C.A. Nos. 13466-P
vacated, Marketing and Managment Information, Inc. v. Beale,
155 F.3d 567, 1998 WL 314626 (Fed. Cir. 1998) ................................................ passim

A.C. Nielsen Co., et al. v. Defense Commissary Agency,
1996-2 B.C.A ¶28,382, G.S.B.C.A. Nos. 13466-P......................................................6,10

Barnes v. United States,
138 Ct. C 150 F. Supp. 317 (1957) ........................................................................... 7

Data General Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996) .................................................................................. 11

Diamond v. U.S. Agency for International Development,
315 F.3d 312 (Fed. Cir. 1997) .................................................................................... 5

Dynamics Corp. of America v. United States,
182 Ct. C 389 F.2d 424 (1968) ............................................................................... 17

G.L. Christian & Associates v. United States,
160 Ct. C 312 F.2d 418, rehearing denied, 160 Ct. C 320 F.2d 345,
cert. denied, 375 U.S. 954 (1963) ........................................................................... 13

Government Systems Advisors, Inc. v. United States,
847 F.2d 811 (Fed. Cir. 1988) ............................................................................. 16,17

Hi-Shear Technology Corp. v. United States,
356 F.3d 1372 (Fed. Cir. 2004) ........................................................................... 16,17

Hi-Shear Technology Corp. v. United States,
53 Fed. Cl. 420 (2002) ............................................................................................. 17

Hi-Shear Technology Corp. v. United States,
55 Fed. Cl. 418 (2003) ............................................................................................. 17

Howat v. Kansas,
258 U.S. 181 (1922) ................................................................................................... 5

Integrated Systems Group, Inc.,
1995-1 B.C.A. ¶ 27,308, G.S.B.C.A. No. 11214-P ................................................... 6

Maness v. Meyers,
419 U.S. 449 (1975) ................................................................................................... 5

Manuel Brothers, Inc. v. United States,
55 Fed. Cl. 8 (2002),
aff'd, 2004 WL 842780 (2004) .......... 10

Marketing and Management Information, Inc. v. Beale,
155 F.3d 567, 1998 WL 314626 (Fed. Cir. 1998) .......... passim

Marketing and Management Information, Inc. v. United States,
57 Fed. Cl. 665 (2003) .......... passim

Massengill v. Guardian Management Co.,
19 F.3d 196 (5th Cir. 1994) .......... 7

Metaphor Computer Systems, Inc.,
1990-1 B.C.A. ¶ 22,542, G.S.B.C.A. No. 10337-P,
modified on reconsideration, 1990-2 B.C.A. ¶22,674,
G.S.B.C.A. No. 10337-P-R .......... 2,8,19

United States v. United Mine Workers,
330 U.S. 258 (1947) .......... 5,6,10

Walker v. City of Birmingham,
388 U.S. 307 (1967) .......... 5

West Communications Services v. United States,
940 F.2d 622 (Fed. Cir. 1991) .......... 15

Wolff Shoe Co. v. United States,
141 F.3d 1116 (Fed. Cir. 1998) .......... 6

**FEDERAL STATUTES AND REGULATIONS**

The Competition in Contracting Act of 1984,
Pub. L. No. 98-369, Title VII, 98 Stat. 494 .......... 15

40 U.S.C. § 759 (f) (1986) .......... 15

41 U.S.C. § 610 .......... 6

48 C.F.R. § 33.103 (1995) .......... 2

48 C.F.R. § 52.249-2 .......... 13

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MARKETING AND MANAGEMENT INFORMATION, INC. ,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 99-194C** |
| | ) | **(Judge Bruggink)** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN *LIMINE***

Pursuant to the Court's order, dated October 30, 2003, as revised on June 9, 2004, the Government responds to plaintiff's motion in *limine* in which plaintiff, Marketing and Management Information, Inc. (MMI), contends that the Court should rule that the breach of contract occurred on April 1, 1996, or at the latest on September 30, 1996, and that the contract performance period should be a total of five years, instead of three.

We demonstrated in our initial brief that the Court should deny MMI recovery for breach of contract damages because the parties did not intend MMI to recover any appropriated funds in the form of damages from its non-performance of Contract DECA01-96-S-0001 (the Contract). Def. Br. 13-14.[1] The Contract explicitly states that it does not involve the expenditure of any appropriated funds by Congress and, as this Court found,[2] the Contract does not contain a termination of convenience clause which provides for the payment of money for the premature

---

[1] "Def. Br. __" is a citation to the Defendant's Motion *In Limine*, filed on May 21, 2004. "Def. App __" is a citation to the appendix to Defendant's Motion *In Limine*. "Pl. Br. __" is a citation to Plaintiff's Motion *In Limine*, filed on May 21, 2004. "Pl. App. __" is a citation to Appendix to Plaintiff's Motion for Partial Summary Judgment filed on October 18, 2002. "Def. Rep. App. __" is a citation to the appendix to this brief.

[2] Marketing and Management Information, Inc. v. United States, 57 Fed. Cl. 665, 674-75 (2003).

termination of the Contract. In addition, we demonstrated that MMI waived its right to claim breach of contract damages by voluntarily and knowingly[3] entering into a contract with significant automatic data processing equipment (ADPE) requirements without DeCA's seeking approval of the GSA. MMI assumed the risk that the Contract would be declared void *ab initio*. MMI also waived its claim to collect damages for the Government's sale of scanner data upon a non-exclusive basis by not filing a lawsuit to prevent the sale of such data to A.C. Nielsen Corp. (ACNielsen) and Information Resources, Inc. (IRI) in May of 1996, when it had an opportunity to do so. Finally, we demonstrated that no breach could have occurred prior to June 12, 1998, when the contracting officer issued its notice of termination, but that, if recovery is permitted, MMI cannot recover damages after December 31, 1998, because that is the Contract expiration date.

---

[3] We demonstrated that MMI knowingly assumed the risk based upon the fact that a protest was filed in connection with the previous solicitation for the sale of commissary product movement data because the responsible agency, the Air Force, had not obtained the requisite Delegation of Procurement Authority (DPA) from the General Services Administration (GSA). Metaphor Computer Systems, Inc., 1990-1B.CA. ¶ 22,542, G.S.B.C.A. No. 10337-P (Dec. 19, 1989), modified on reconsideration, 1990-2 B.C.A. ¶ 22,674 (Jan. 29, 1990). Def. Br. 3. We also demonstrated that MMI was aware that there were potential problems with the solicitation at issue in this case and MMI had raised its concerns with the Defense Commissary Agency (DeCA) prior to completion of RFP No. DECA01-94-R-0068 (the Solicitation). Def. Br. 4.

However, we were unaware until after that we filed our motion *in limine* that MMI had, in fact, filed an agency protest with DeCA, pursuant to 48 C.F.R. § 33.103 (1995), shortly before contract award on August 8, 1995, in which it challenged DeCA's "legal basis for acquiring supermarket scanner data comparisons" for several reasons, including the fact that DeCA had not obtained a DPA to undertake the procurement. Def. Rep. App. 19, 24. Significantly, MMI tried to have it both ways by filing the agency protest, yet, at the same time, stating that it would withdraw the protest if MMI were selected for the award. Def. Rep. App. 19. In any event, the contracting officer denied the agency protest because he determined that requirement for the delivery of supermarket scanner data comparisons did not exceed the agency's needs. Def. Rep. App. 29. He did not address MMI's point that DeCA should have obtained a DPA.

The General Services Administration Board of Contract Appeals (GSBCA) declared that the Contract void *ab initio* on February 23, 1996,[4] but the United States Court of Appeals for the Federal Circuit did not vacate the GSBCA decision until it dismissed MMI's appeal as moot on May 19, 1998. A.C. Nielsen Co., et al. v. Defense Commissary Agency, 1996-1 B.C.A. ¶ 28,253, G.S.B.C.A. Nos. 13466-P, 13469-P, 13470-P (A.C. Nielsen I), vacated, Marketing and Management Information, Inc. v. Beale, 155 F.3d 567, 1998 WL 314626 (Fed. Cir. 1998). We demonstrate below that DeCA could not have permitted MMI to commence work under the Contract prior to May 19, 1998, without violating the GSBCA's order declaring the Contract void *ab initio.* The Government cannot be liable for a breach of the Contract prior to the time it terminated the Contract on June 12, 1998.

In addition, DeCA is not liable for damages for a total of five years, because the contract performance period was only three years. According to section B and ¶ F.2 of the Contract, the Contract performance period commenced on January 1, 1996, and ended on December 31, 1998, and contained two option years which were exercisable at the sole discretion of the Government. The Government's decision to exercise its option in this case was independent from its decision to exercise its option in other contracts. Accordingly, the Government's exposure to damages, if any, in this case is limited to the period from when the breach occurred, June 12, 1998, through the end of the contract performance period, December 31, 1998.

---

[4] In our initial brief, we inadvertently cited the date of the GSBCA decision as February 26, 1996. We wish to correct this error at this time.

## ARGUMENT

### I. MMI Fails To Establish That DeCA Breached The Contract Prior To June 12, 1998

MMI contends that the Government breached the Contract on April 1, 1996, when the three-month extension of Contract No. F41689-89-S-1001 (the Air Force contract) expired and the Government failed to perform. Pl. Br. 4-7. In the alternative, MMI contends that the Government breached the Contract no later than September 30, 1996, when it cancelled Solicitation DECA01-94-R-0068. Pl. Br. 7-8. MMI further contends that because the Government allegedly made contradictory arguments concerning when the Contract was terminated, it should be precluded from relying upon the GSBCA's decision as a basis for forestalling its breach. Pl. Br. 8-11.

To accept MMI's arguments, the Government would have had to disregard the holding of the GSBCA which, on February 23, 1996, declared the Contract void *ab initio* because DeCA failed to obtain a DPA to procure automatic data processing services which were valued in excess of $10,000,000. A.C. Nielsen I, 1996-1 B.C.A. ¶ 28,253, at 141,067. Since DeCA lacked the authority to award the Contract to MMI in the absence of a DPA, the GSBCA declared the Contract "a nullity and . . . void." Id. As a result of this ruling, neither DeCA, nor MMI could proceed with the Contract. DeCA was required to "reassess the procurement and proceed in accordance with statute and regulation." Id. However, the Government never obtained a DPA. The Government could not have breached the Contract prior to the time it had legal effect.

### A. The Parties Were Required To Comply With The Board's Order Declaring The Contract Void *Ab Initio*

It is well-established that the parties to a court proceeding are obligated to comply with court orders that issue from that proceeding. Diamond v. U.S. Agency for International Development, 315 F.3d 312, 315 (Fed. Cir. 1997). The Supreme Court in United States v. United Mine Workers, 330 U.S. 258 (1947), held that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." Id. at 293; Maness v. Meyers, 419 U.S. 449, 458-59 (1975). This is true even if the law at issue may be in question. Id. Justice Frankfurter, in his concurring opinion, in United Mine Workers, articulated the rationale for this approach:

> The historic phrase "a government of laws and not of men" epitomizes the distinguishing character of our political society. . . . Every act of government by an appeal to law, as finally pronounced by [the Supreme Court]. Even this Court has the last say only for a time. Being composed of fallible men, it may err. But revision of its errors must be by orderly process of law.
>
> * * * *
>
> . . . . No one, no matter how exalted his public office or how righteous his private motive, can be judge in his own case. That is what courts are for. . . .

United Mine Workers, 330 U.S. at 308-09 (Frankfurter, J., concurring). "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal . . . . or though the basic action has become moot . . . ." Id. at 294 (internal citations omitted); see, Walker v. City of Birmingham, 388 U.S. 307, 320 (1967); Howat v. Kansas, 258 U.S. 181, 189-90 (1922).

DeCA could not proceed with the Contract. DeCA had no choice but to comply with the GSBCA's order finding the Contract void *ab initio* while MMI's appeal was pending, even if

DeCA disagreed with the board's decision. United Mine Workers, 330 U.S. at 298; see, e.g., Wolff Shoe Co. v. United States, 141 F.3d 1116, 1122 (Fed. Cir. 1998) (Government was required to comply with injunction in a related Court of International Trade proceeding to which it was a party). DeCA could no more ignore the decision of the GSBCA than it could ignore a ruling of this Court because it disagreed with it. As we demonstrated in our initial brief, Def. Br. 6-7, MMI took the additional step of attempting to stay the effect of the GSBCA's decision while its appeal of the board's ruling was before the Federal Circuit. A.C. Nielsen Company, et al., v. Defense Commissary Agency, 1996-2 B.C.A. ¶ 28,382, at 141,744, 141,746 (A.C. Nielsen II). However, the GSBCA denied MMI's motion, finding that MMI failed to satisfy the four prerequisites for a stay. Id. at 141,747.

DeCA had no legal basis to allow MMI to proceed with the void Contract. To do so would have been a violation of the GSBCA's order declaring the Contract a nullity and DeCA would have subjected itself to contempt proceedings. Even though the GSBCA itself does not have the authority to institute contempt proceedings, the board or a party may seek relief in a United States district court which does possess the authority to impose such sanctions. 41 U.S.C. § 610; see Integrated Systems Group, Inc., 1995-1 B.C.A. ¶ 27,308, G.S.B.C.A. No. 11214-P, at 27,309 (Devine, concurring). Moreover, it is entirely probable that, if DeCA had allowed MMI to proceed with the Contract, ACNielsen, IRI, and Management Sciences Associates, Inc. (MSA) would have sought and been granted an injunction against DeCA's actions.

**B. No Breach Occurred On April 1, 1996**

Because the Contract was declared void *ab initio* as of February 23, 1996, and the Government had no basis for proceeding with its performance under the Contract, the

Government cannot be held liable for failing to perform on a non-existent contract from the period from January 1, 1996, through May 19, 1998. It is axiomatic that, without a contract, there can be no breach. See, e.g., Massengill v. Guardian Management Co., 19 F.3d 196, 205, n.4 (5th Cir. 1994); Barnes v. United States, 138 Ct. Cl. 76, 80, 150 F. Supp. 317, 320 (1957). No breach could have occurred on April 1, 1996, when the three-month extension to the Air Force contract that MMI had with DeCA (F41689-89-S-1001) expired, because no contract existed and DeCA had no obligation to deliver the product movement data to MMI.

MMI asserts that choosing the breach date of April 1, 1996 makes sense based upon the parties' expectations at the time they entered into the Contract. That is not correct. As we demonstrated in our initial brief, Def. Br. 20-22, the Contract specified that performance would begin on January 1, 1996. Paragraph F.2 of the Contract specifies that the performance period will run from January 1, 1996, through December 31, 1998, with two one-year options. Def. App. 35, ¶ F.2. Section B of the Contract identifies the period of time from January 1, 1996, through December 31, 1998, as the base period of performance. Def. App. 4-5.

MMI further suggests that, in light of the possibility of a protest, the parties contemplated a three-month delay in the commencement of the Contract. Pl. Br. 6. No basis exists for this suggestion. After ACNielsen, IRI, and MSA filed their protest November 1995, the Contracting Officer extended the period of performance by three months because DeCA wanted to insure that it could continue to provide its suppliers with commissary production movement data. See A.C. Nielsen II, 1996-2 B.C.A. ¶ 28,382, at 141,746 ("DeCA's current requirement is to get product movement data to its industry partners.") The Air Force contract contained a clause which permitted the agency to extend the performance of the Air Force contract by three months. Def.

Rep. App. 15. MMI was well-aware that this new Contract could be the subject of a protest. See Def. App. 103; Def. Rep. App. 19-28. Based upon the previous protest, MMI was aware that the resolution of a protest could take a long period of time. See Metaphor Computer Systems, Inc., 1990-1 B.C.A. ¶ 22,542, G.S.B.C.A. No. 10337-P, modifed on reconsideration,1990-2 B.C.A. ¶ 22,674, G.S.B.C.A. No. 10337-P-R. The Metaphor protest could not be resolved until the Air Force obtained a DPA from the Administrator of the GSA or sought the approval of the GSA to proceed under a blanket DPA. Metaphor, 1990-2 B.C.A. ¶ 22,674, at 113,905. This delayed the commencement of the Air Force contract by a year. Def. Rep. App. 16-17.

MMI admits that it uses the "'April 1, 1996' formulation as a shorthand reference for the fact that the breach occurred when DeCA failed to provide MMI with exclusive access to scanner data relating to April 1996 commissary sales." Pl. Br. 4-5, n.1. However, by means of a licensing agreement, the Government continued to provide MMI with the product movement data upon an exclusive basis after April 1, 1996, until IRI requested the scanner data on July 16, 1996, and A.C. Nielsen requested the data on August 16, 1996. Thus, even on MMI's own terms, no breach could have occurred until after mid-July 1996.

### C. No Beach Occurred On September 30, 1996

MMI is wrong when it contends, in the alternative, that the breach occurred on September 30, 1996, when DeCA cancelled the Solicitation. DeCA could not breach a non-existent contract. Because, as the GSBCA ruled, no contract had been formed, A.C. Nielsen I, 1996-1 B.C.A. ¶ 28,253, at 141,067, DeCA did not breach the non-existent contract when it cancelled the Solicitation. Even if DeCA had not cancelled the Solicitation on September 1996, the parties would still not have been able to perform the Contract because the GSBCA had declared it void

*ab initio*.

It is clear that the cancellation of the Solicitation had no effect upon the date on which the breach occurred. Given the GSBCA's decision finding that the Contract was void, only a ruling by the Federal Circuit could have reinstated the parties' obligations under the Contract, possibly giving rise to a breach of contract claim. DeCA's decision to cancel the Solicitation had no impact upon the speed with which the Federal Circuit acted. In addition, in its opinion vacating the GSBCA, the Federal Circuit did not indicate one way or another whether it would have reversed the GSBCA's decision had it not found the appeal moot. See Marketing and Management Information, 155 F.3d 567, 1998 WL 314626, at **2. In any event, the cancellation of the Solicitation did not breach the Contract and it should have no impact whatsoever upon the Court's selection of a breach of contract date.

**D. No Breach Occurred Prior To June 12, 1998**

MMI contends that the breach necessarily occurred prior to May 19, 1998, when the Federal Circuit vacated the GSBCA's decision declaring the Contract void *ab initio*. Pl. Br. 8-11. However, MMI does not explain how that is possible. Pursuant to the GSBCA's decision, no contract was in effect from its award on October 26, 1995, until May 19, 1998, when the Federal Circuit vacated the board's decision.

Even if the Federal Circuit's decision effectively reinstated the Contract,[5] there is no basis to conclude that the Government breached the Contract prior to June 12, 1998. As we demonstrated above, the GSBCA declared the Contract a nullity, and neither party could proceed

[5] It is difficult to see how the Federal Circuit's decision could have done so, since the Federal Circuit never ruled upon that the Contract was valid, as awarded.

with the Contract pending MMI's appeal to the Federal Circuit. A.C. Nielsen I, 1996-1 B.C.A. ¶ 28,253, at 141,067; A.C. Nielsen II, 1996-2 B.C.A. ¶ 28,382, at 141,747. Had they done so, they would have been in violation of the board's order and subject to further court action. United Mine Workers, 330 U.S. at 293. Contrary to MMI's suggestion, Pl. Br. 8, the Government cannot be held liable for the fact that the Federal Circuit took 26 months, from March 1996 when MMI filed its appeal, until May 1998,[6] to decide the fate of MMI's appeal. No basis exists for this Court to award MMI breach damages for that period of time.

**E. The Doctrine Of Judicial Estoppel Does Not Apply Here**

MMI contends that the Government should be judicially estopped from contending that the breach occurred no earlier than June 12, 1998. Pl. Br. 8-11. MMI's argument is based upon its assertion that, in the prior proceeding before the Federal Circuit, the Government allegedly contended that the Contract was terminated on September 30, 1996, and, in this proceeding, it is contending that the Contract was terminated on June 12, 1998. We did not contend before the Federal Circuit that the Contract was terminated on September 30, 1996. Hence, there is no basis for applying the doctrine of judicial estoppel here.

After the contracting officer issued Amendment 2, on September 30, 1996, cancelling the Solicitation, the question before the Federal Circuit was whether MMI's appeal was moot. We contended that the cancellation of the Solicitation rendered the appeal moot because the Federal

---

[6] MMI refers to an 18-month delay in the Federal Circuit's resolution of MMI's appeal. It is not clear which 18-month delay is referring to. Nevertheless, the Government is not responsible for the time the Federal Circuit took in decIRIng MMI's appeal. This is somewhat analogous to the delay and disruption cases: the Government cannot be held liable for delays caused by circumstances outside of its control. See, e.g., Manuel Brothers, Inc. v. United States, 55 Fed. Cl. 8, 44 (2002), aff'd, 2004 WL 84270 (2004).

Circuit's ruling would not have any effect upon the parties' legal interests no matter what the Federal Circuit decided. We contended that, if the Federal Circuit affirmed the GSBCA's decision finding the Contract void *ab initio*, then the "affirmance would merely continue to prevent DeCA from awarding a contract pursuant to the solicitation." Def. Rep. App 40. Alternatively, we contended, in the first instance, that, if the Federal Circuit sustained MMI's appeal and vacated the GSBCA's order, that would have no effect upon the parties' legal interests because, to the extent that the Federal Circuit's decision required DeCA to reopen the procurement, DeCA would not proceed with any future contract due to the cancellation of the Solicitation. Def. Rep. App. 40-41. In the second instance, if the Federal Circuit sustained MMI's appeal, vacated the GSBCA's order, and re-instated the Contract, that would have no effect upon the parties' legal interests because DeCA would have to immediately terminate the Contract for the Government's convenience. Def. Rep. App. 41-42. We concluded that the parties would occupy the same legal position no matter what the Federal Circuit did because no party -- neither MMI, A.C. Nielsen, nor IRI – would receive the award of the contract and no party would perform or receive any benefits under the contract. Def. Rep. App. 42.

The doctrine of judicial estoppel does not apply here because the Government has not taken inconsistent positions in this case and in MMI's appeal to the Federal Circuit. See, e.g., Data General Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996). At the Federal Circuit, we did not argue that the Contract terminated on September 30, 1996. Nor did we contend that the cancellation of the Solicitation effectively terminated the Contract. In fact, MMI, in mischaracterizing the Government's argument before the Federal Circuit, argued that canceling the Solicitation amounted to terminating the Contract for the Government's convenience. Def.

Rep. App. 50-54. We disagreed with MMI's position and argued, under the third scenario discussed above, that if the Federal Circuit reinstated the Contract, the Government would have to terminate it for its convenience.

In addition, the doctrine of judicial estoppel does not apply because the issues in this case are different from the issues before the Federal Circuit. The issue in this case is whether and, if so, when the Government breached the Contract with MMI. There was no occasion to reach this issue before the Federal Circuit because: (1) the board had declared the Contract void *ab initio* and, thus, the question of breach could not arise; and (2) the Government did not attempt to terminate the Contract for convenience until after the Federal Circuit issued its decision in Marketing and Management Information, Inc. v. United States, 155 F.3d 567, 1998 WL 314626 (Fed. Cir. 1998). It was only after the Federal Circuit had vacated the decision of the GSBCA declaring the Contract void *ab initio* and the Government attempted to terminate the Contract for convenience that the question of whether, and, if so, when the Government breached the Contract could arise.

Contrary to MMI's contention, the contracting officer did not intend to terminate the Contract when he issued Amendment No. 2, because no contract existed. Amendment No. 2 to the Solicitation states: "Based on the current and projected needs of the agency, it has been determined that the requirements set forth in the solicitation no longer adequately describe the needs of the agency. This solicitation is hereby canceled in the entirety." Pl. App. 275-76. The contracting officer made no mention of terminating the Contract. It would not have made sense for the DeCA to try to do so, because the GSBCA had declared the Contract void *ab initio* and that ruling was still in effect.

After the Federal Circuit issued its decision dismissing MMI's appeal and vacating the GSBCA's decision, the contracting officer, on June 12, 1998, notified MMI that the Contract was terminated in its entirety for the convenience of the Government. Pl. App. 280-81. In his notification letter, the contracting officer recounted the events which led to his decision, including the board's opinion declaring the Contract void *ab initio* and the cancellation of the Solicitation. Id. at 280. He stated that the Federal Circuit dismissed MMI's appeal because the Solicitation had been canceled and that the court vacated the earlier decision of the GSBCA. Id. The contracting officer further stated that

> the agency's cancellation of the solicitation in September of 1996 constituted a withdrawal of the contract. The effect of these actions [(referring to the cancellation of the Solicitation and the Federal Circuit's decision] was to terminate the contract for convenience.

Id. To terminate the Contract, the contracting officer relied upon the termination for convenience clause, 48 C.F.R. § 52.249-2, although the clause was not physically present in the Contract. He concluded that the termination for convenience clause was included as a matter of law under the G.L. Christian & Associates v. United States, 160 Ct. Cl. 1, 312 F.2d 418, rehearing denied, 160 Ct. Cl. 58, 320 F.2d 345, cert. denied, 375 U.S. 954 (1963). The Court has found since then that the contracting officer erred. Marketing and Management Information, 57 Fed. Cl. at 674-75. Nevertheless, it is clear that he intended to terminate the Contract for the Government's convenience.

Even though the contracting officer's stated in his June 12th letter that the effect of the cancellation of the Solicitation and the vacation of the GSBCA decision by the Federal Circuit was to terminate the Contract for convenience, the Government has not argued that the

cancellation of the Solicitation amounted to a termination for convenience. If, in the Government's view, the cancellation of the Solicitation amounted to a termination for convenience, the contracting officer would have not have seen a need to terminate the Contract for convenience. In fact, when asked during his deposition why he terminated the contract for convenience after the Solicitation had been cancelled, the contracting officer, Larry Hahn, stated:

> Because the [Federal Circuit] opinion that was provided to me identified that there may still be an issue that needed to be resolved, and the solution was a cancellation of the contract, assuming that it did exist.

Pl. App. 393-94 (Hahn depo. 129-30).

Contrary to MMI's contention, the doctrine of judicial estoppel does not apply here, because the Government has not changed its position in different proceedings. The Government has not argued that the cancellation of the Solicitation effectively terminated the Contract for the Government's convenience. If it had taken that position, the contracting officer would not have felt the need to issue the June 12, 1998 letter terminating the Contract for the Government's convenience as of that date.

### F. A Ruling From The Court That The Breach Occurred On June 12, 1998 Does Not Result In Absurd Consequences

MMI argues that absurd consequences result from the Government's contention that no breach occurred while the GSBCA decision had legal effect. Pl. Br. 10-11. MMI bases this argument, in part, upon its assumption that this Court has ruled that the Contract was valid and binding from its inception. Pl. Br. 10. MMI does not identify the source of this assumption, and we are unable to identify any basis for it.

This Court has ruled that the Contract did not utilize appropriated funds. Marketing and

Management Information, 57 Fed. Cl. at 674. From this, it ruled that (1) the Contract did not meet the Federal Acquisition Regulation's definition of acquisition, (2) the Brooks Act was not applicable, and, therefore, (3) the termination of convenience clause could not be read into the Contract by operation of law under the Christian doctrine. Id. It further ruled that, "[a]bsent the power delineated by the contract to terminate for convenience, the government's termination constituted a breach." Id. at 675. This Court has not ruled that the Contract was valid and binding from its inception.

Even if, at this late date, the Court did find that the Contract was valid and binding from its inception,[7] that would not change the fact that the DeCA could not have performed the Contract until after the Federal Circuit vacated the GSBCA's order finding the Contract void *ab initio*. At the time the protest was filed, the GSBCA had the exclusive authority to resolve protests in connection with any procurements for ADPE. 40 U.S.C. § 759(f) (1986). The GSBCA determined that it possessed jurisdiction to entertain ACNielsen's, IRI's, and MSA's protest in accordance with that statutory provision and it ruled that the Contract was void *ab initio*. A.C. Nielsen I, 1996-1 B.C.A. ¶ 28,253, at 141,060. Neither DeCA, nor MMI could proceed with contract performance while MMI's appeal was pending, especially in light of the GSBCA's denial of MMI's request to stay the effect of its ruling. A.C. Nielsen II, 1996-2 B.C.A. ¶ 28,382, at 141,747. Once the decision was vacated, since DeCA had cancelled the Solicitation

[7] To the extent that such a determination would require the Court to decide the question of whether the GSBCA possessed or lacked jurisdiction to decide A.C. Nielsen's protest, this Court would not have such authority. The Competition in Contracting Act of 1984, Pub. L. No. 98-369, Title VII, 98 Stat. 494, 1175, gave the GSBCA protest authority pertaining to ADPE. West Communications Services v. United States, 940 F.2d 622, 628 (Fed. Cir. 1991); 40 U.S.C. § 759 (f). This Court does not sit as an appellate court to review the decisions of the GSBCA pertaining to protests involving ADPE.

because its needs had changed, DeCA could not permit MMI to proceed with contract performance. Although the Court has ruled that DeCA lacked the power to terminate the Contract for convenience on June 12, 1998, DeCA did nothing prior to that time that can be interpreted as a breach. MMI offered to perform the Contract on June 12, 1998, and DeCA declined to proceed with contract performance on that date. Accordingly, the Government's position that it could not have breached the Contract prior to June 12, 1998 is not absurd.

## III. MMI Fails To Establish That The Contract Would Have Run For Five Years

We demonstrated in our initial brief that the Contract performance period commenced on January 1, 1996, concluded on December 31, 1998, and contained two one-year options exercisable at the discretion of the Government. Def. Br. 19-24; Def. App. 4-5; 11, ¶ C.8.1; 35, ¶ F.2; 40, ¶ I.18; 41, ¶ I.19. The Contract clearly provides that it would have run for three years, not five. The Contract could have run for five years only if DeCA, at its sole discretion, decided to exercise the two one-year options contained in the Contract. Def. App. 5, 11, ¶ C.8.1;35, ¶ F.2; 40, ¶ I.18; 41, ¶ I.19. DeCA never exercised its option to extend the contract performance under the Contract. Therefore, there is no basis for MMI to recover damages for the unexercised option years. Hi-Shear Technology Corp. v. United States, 356 F.3d 1372, 1380 (Fed. Cir. 2004); Government Systems Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed. Cir. 1988).

MMI acknowledges in its brief that an option to extend a contract "does not create a legal obligation on the part of the government to exercise the option" and that the "'decision not to exercise th[e] option[] does not breach the contract,'" yet it contends that it is entitled to recover damages for five years, from April 1, 1996, through April 1, 2001, because the Government's failure to exercise the option years was the foreseeable consequence of DeCA's breach. Pl. Br.

11-12. The Court should reject MMI's attempt to circumvent the Federal Circuit's clear statement of the law that the Government cannot be held liable for damages in option years.

In Hi-Shear Technology, the plaintiff contended that, as a consequence of the Government's negligently overestimating its needs in its invitation for bids, the plaintiff's damages should include the two of the four option years which the Government declined to exercise. Hi-Shear Technology, 356 F.3d at 1375; Hi-Shear Technology Corp. v. United States, 55 Fed. Cl. 418, 423 (2003). Citing Government Systems Advisors, 847 F.2d at 813, the Federal Circuit rejected plaintiff's arguments and held that Hi-Shear's damages recovery was limited to the base year and the two option years that the Government had exercised. Contrary to MMI's suggestion, Pl. Br. 11-12, the concept of "foreseeability" is irrelevant to the question of whether it can recover damages during unexercised option years.

The courts have consistently held that, where the Contract provides, the decision to exercise an option is within the sole discretion of the Government. Hi-Shear Technology, 356 F.3d at 1380; Government Systems Advisors, 847 F.2d at 813; Dynamics Corp. of America v. United States, 182 Ct. Cl. 62, 74, 389 F.2d 424, 431 (1968); Def. App. 4-5; 11, ¶ C.8.1; 35, ¶ F.2. The only basis for a court to award damages during the period of time in which the Government failed to exercise an option is if the plaintiff can show that the Government's failure to exercise an option was in bad faith. See Hi-Shear Technology Corp. v. United States, 53 Fed. Cl. 420, 436 (2002). MMI has not alleged that the Government engaged in bad faith in failing to exercise its options. In any event, this Court has dismissed MMI's claims of bad faith. Marketing and Management Information, 57 Fed. Cl. at 675-76.

Even if the Court were to entertain MMI's contention that the Court should examine the

factual circumstances underlying the question of whether the Government would have exercised either of the two options under the Contract, the evidence is clear that the Government would not have exercised these options. General Richard Beale, who was director of DeCA at the time, testified that, when DeCA awarded the Contract to MMI, DeCA contemplated that the Contract would last only three years and that DeCA would not have exercised the two option years. Pl. App. 449 (Beale depo. at 160).[8]

It does not follow from the fact that the DeCA exercised its two option years in the predecessor contract with MMI and that DeCA exercised its option years in the contract it awarded to IRI in 2000[9] that DeCA would have exercised its options under this Contract. The

---

[8] General Beale testified as follows during his deposition:

> **Q.** So you awarded a contract that you though you didn't need for the full [three-year] term?
>
> **A.** [Gen. Beale]: I thought that for the full term, it would be overkill in terms of where we saw ourselves going. But, you know, you say that, and then you say "Okay, what can happen?" And so you say "Okay, let's give it three years. That's a fair amount of time."
>
> But I can tell you unequivocally that in my mind that, if that contract had been awarded for three years, I can tell you with every degree of assurance that, in all likelihood, neither option year would have had to have been exercised.

Pl. App. 449 (Beale depo. at 160).

[9] MMI errs when it states that DeCA awarded a contract to IRI in 1999 "to supply category management services of the same sort that MMI would have supplied in each of the option years." Pl. Br. 12. In the first place, DeCA's contract with IRI was to obtain access to commissary sales/movement data for all DeCA commissaries within the continental United States, as well as comparable sales/movement data from commercial grocery stores within the same geographical areas. Def. Rep. App. 61. DeCA did not procure any category management services in its contract with IRI. Id. In the second place, DeCA did not award that contract until

predecessor contract and the 2000 IRI contract were different from this Contract. For example, neither the predecessor contract, nor the 2000 IRI contract required the contractor to supply category management services to DeCA. See, generally, Metaphor, 1990-1 B.C.A. ¶ 22,542, at 113,114-16; Def. Rep. App.1-13, 59-61.[10] Moreover, since MMI never performed the Contract, there were no guarantees that DeCA would have been satisfied with the category management services MMI were expected to provide.

Furthermore, as General Beale testified, both the industry and DeCA were undergoing a number of changes in the mid-to-late 1990s, both in the way they conducted business and in the technological equipment they used, which would have rendered the Contract out-of-date by the end of three years. Pl. App. 448-50 (Beale depo. 154-63). Although DeCA continued to need to make its scanner data available to the suppliers of the commissary goods after the Contract was declared void *ab initio*, it decided to employ a new contract vehicle – a licensing agreement, which resulted from an auction spot bid sale – to make the data available to its suppliers. See A.C. Nielsen II, 1996-2 B.C.A. ¶ 23,381, at 141,796-97; Def. Rep. App. 30-34. To this day, DeCA sells its data to MMI, IRI, and ACNielsen by means of licensing agreements. See Def. Rep. App. 62-66, 67-70, 71-74.

Accordingly, no basis exists to conclude that the Government is liable for breach of contract damages for five years. The Contract performance period ended on December 31, 1998. The Government cannot be held liable for breach of contract damages after that date.

---

May 19, 2000. Def. Rep. App. 59.

[10] While there are a number of other differences between the Contract and these other contracts, it is not necessary to discuss these differences in greater detail for our purposes here.

CONCLUSION

For the foregoing reasons and the reasons stated in our initial brief, we respectfully request that the Court dismiss MMI's claim for damages because (1) the Contract provided that there would be no expenditure of funds by the Government, and (2) in any event, MMI waived any right it had to recover damages by voluntarily and knowingly entering into a contract with ADPE requirements without DeCA's seeking approval of the GSA. In the alternative, we respectfully request the Court to rule, as a matter of law, that (1) the breach of the contract occurred no earlier than June 12, 1998, and (2) MMI is not entitled to collect (a) damages after December 31, 1998, because the contract performance period ended on that date, (b) interest upon its damages claim because the Contract is not governed by the Contract Disputes Act. In addition, we respectfully request that the Court issue an order (1) precluding MMI's expert, Mr. Metcalfe, from testifying at trial upon any economic matters, and (2) striking pages 3 through 11 of the Metcalfe Rebuttal Report because Mr. Metcalfe is not qualified to testify as an economist.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ David M. Cohen
DAVID M. COHEN
Director

/s/ Sheryl Floyd
SHERYL FLOYD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0282
Facsimile: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

THOMAS D. RATHGEB
ELLIOTT CLARK
Office of General Counsel
Defense Commissary Agency
Fort Lee, VA 23801-1800

JULY 8, 2004

**CERTIFICATE OF FILING**

I hereby certify that on 8th day of JULY 2004, a copy of the "DEFENDANT'S RESPONSE TO PLAINTIFF'S *IN LIMINE*" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Sheryl Floyd