**No. 99-194C**
**(Judge Bruggink)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**MARKETING AND MANAGEMENT INFORMATION, INC.**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

---

# APPENDIX TO DEFENDANT'S REPLY TO PLAINTIFF'S MOTION *IN LIMINE*

**Volume 1 of 1, Pages 1 through 74**

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**SHERYL FLOYD**
**Senior Trial Counsel**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 307-0282**

**Attorneys for Defendant**

**OF COUNSEL:**

**THOMAS D. RATHGEB**
**ELLIOTT CLARK**
**Office of General Counsel**
**Defense Commissary Agency**
**Fort Lee, VA 23801-1800**

**JULY 8, 2004**

# INDEX TO APPENDIX

Contract No. F41689-89-S1001, dated October 3, 1989, between Military Audits of Market Information, Inc. and the United States Air Force (partial) . . . . . . . . . . . . . . 1

Amendment No. P00003, dated November 9, 1990, to Contract No. F41689-89-S1001 . . . 16

Amendment No. P00012, dated December 14, 1995, to Contract No. F41689-89-S1001 . . 18

Letter, dated August 8, 1995, from Loretta M. Downey to Lawrence P. Hahn (with attachment) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Letter, dated October 10, 1995, from Lawrence P. Hahn to Loretta Downey . . . . . . . . . . . . 29

Subscription Agreement for Scanner Data, for Marketing and Management Information, Inc., dated May 23, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Subscription Agreement for Scanner Data, for A.C. Nielsen., dated August 15, 1996 . . . . . 31

Subscription Agreement for Scanner Data, for Information Resources, Inc., dated July 16, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Letter, dated November 4, 1996, from Edward M. Downey to Lawrence P. Hahn, attaching Appellee's Motion to Dismiss, in connection with Marketing and Management Information, Inc. v. Defense Commissary Agency, No. 96-1270 (Fed. Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Appellant's Response to Appellee's Motion to Dismiss, in connection with Marketing and Management Information, Inc. v. Defense Commissary Agency, No. 96-1270 (Fed. Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Contract No. DECA04-00-C-0026, dated May 26, 2000, between Defense Commissary Agency and Information Resources, Inc. (partial) . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Notices of Intention to Exercise Option to Scanner Data Subscription Agreement between Empower IT Inc. (MMI) and Defense Commissary Agency, dated January 21, 2004, and January 23, 2003, and Scanner Data Subscription Agreement between Empower IT Inc. (MMI) and Defense Commissary Agency, dated February 7, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Notice of Intention to Exercise Option to Scanner Data Subscription Agreement between ACNielsen and Defense Commissary Agency, dated January 21, 2004, and Scanner Data Subscription Agreement between ACNielsen and Defense Commissary Agency, dated February 8, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Notice of Intention to Exercise Option to Scanner Data Subscription Agreement between Information Resources, Inc. and Defense Commissary Agency, dated January 23, 2004, and Scanner Data Subscription Agreement between Information Resources, Inc. and Defense Commissary Agency, dated February 8, 2002 ...... 71

SECTION A

3303rd Contracting Squa on
AFCOMS Support Branch (LGCR)
Randolph AFB, Texas 78150-5000
Buyer: Redick M. Hamer, Jr.

RFP No: F41689-89-R0018
Contract No: F41689-89-S1001

Date: 89 MAR 28

SALES CONTRACT

Article I

That:

1. This Sales Contract, by and between the Army, Navy, Marines and Air Force Commissary Services, hereinafter referred to as the Commissary Services, and Military Audits of Market Information, Inc. (MAMI) 1732 Wisconsin Avenue, NW, Washington, DC 20007 (insert name and address of offeror), hereinafter referred to as the contractor, for the sale of Commissary Services product sales data (scanning system) to the contractor in exchange for monetary reimbursement and periodic product movement and sales data reports (as defined in this agreement)

2. The contractor shall perform the services as outlined in this agreement for a period of three years, starting 1990 January 01 and ending 1992 December 31. The performance period may be extended for two additional one (1) year periods, Option Period I - 1993 January 01 through 1993 December 31, and Option Period II - 1994 January 01 through 1994 December 31. The Option Periods shall be confirmed at the time noted in paragraph (a) in Additional Contract Clause No. 1, Section I, Page 4.

3. WITNESSETH, that for and in consideration of the agreement hereinafter set forth and the payments to be made as hereinafter stipulated, it is mutually agreed between the parties hereto:

ARTICLE II

That:

1. The contractor will provide monetary reimbursement as outlined in Schedule B, Supplies or Services and Prices/Costs.

2. The Contractor will perform the services as outlined in Schedule C, Description/Specifications/Work Statement.

ARTICLE III

That:

1. Air Force Auditor General personnel, or any person designated by the Contracting Officer, will have the right to inspect or audit the accounts and methods of internal control established by the Contractor, and to make such inspections or audits as may be considered necessary to ensure strict compliance by Contractor with all provisions of this contract and with applicable Air Force regulations.

2. This Contract is automatically terminated in the event the Commissary Services are dissolved.

3. Any monies due and payable to the Commissary Services from the Contractor on the date of this contract must be paid in full or will remain due and payable until final settlement.

4. Award of Contract: This contract shall become effective when signed by the Contractor and the Contracting Officer, after being reviewed and determined to be legally sufficient.

a. Section A (Introductory paragraph and ARTICLES I through III, and signature page) . . . . . . . . . . Page(s) 1 - 2

b. Section B (Supplies or Services and Prices/Costs) Page(s) 1 - 2

c. Section C (Description/Specifications/Work Statement) . . . . . . . . . . . . . . . . . . . . . Page(s) C1 - C21

d. Section F Deliveries/Performance . . . . . . . . . . Page(s) 1 - ___

e. Section G Contract Administration Data . . . . . . Page(s) 1 - ___

f. Section H Special Contract Requirements. . . . . . . Page(s) 1 - 4

g. Section I General Provisions . . . . . . . . . . . . Page(s) 1 - 16

h. Section K Representations and Certifications . . . Page(s) 1 - 26

i. Section L Instructions to Offerors . . . . . . . . . Page(s) 1 - 5

j. Section M Evaluation Factors for Award . . . . . . Page(s) 1 - 6

ACKNOWLEDGMENT OF AMENDMENTS: (Offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated).

| AMENDMENT NO. | DATE |
|---|---|
| 0001 | 25Apr89 |
| 0002 | 22May89 |
| 0003 | 05Jun89 |
| 0004 | 19Jun89 |
| 0005 | 03Jul89 |
| 0006 | 11Jul89 |

FOR THE GOVERNMENT:

Gary J. Macdecy 3 Oct 1989

Signature of Contracting Officer/Date

GARY J. MACDECY

Type or print name

3303d Contracting Squadron/LGCR
Bldg 399
Randolph AFB, TX 78150-5000

Address and phone number

(512) 652-2491

FOR THE CONTRACTOR:

Edward M Downey

20 July 1989

Signature of person authorized to sign contract/Date

Edward M. Downey, President

Type or print name

Military Audits of Market Information,Inc
1732 Wisconsin Avenue, NW
Washington, DC 20007
(202) 944-4010

Address and phone number

DUNS (Request Pending)
CAGE (Request Pending)

PRIVILEGED AND CONFIDENTIAL

SECTION B

SUPPLIES OR SERVICES AND PRICES/COSTS

| ITEM | SUPPLIES/SERVICES | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|

NON-PERSONAL SERVICES - CONTRACTOR SHALL PROVIDE ALL PERSONNEL, EQUIPMENT, TOOLS, MATERIALS, SUPERVISION, TRAVEL AND OTHER ITEMS AND SERVICES NECESSARY FOR THE PURPOSES OF SALE OF ARMY, NAVY, MARINES AND AIR FORCE COMMISSARY PRODUCT SALES SCANNING DATA TO COMMERCIAL FIRMS IN ACCORDANCE WITH THIS PERFORMANCE WORK STATEMENT.

AS COMPENSATION FOR THE COMMISSARY SCANNING DATA THE CONTRACTOR WILL REIMBURSE THE GOVERNMENT A PERCENTAGE OF HIS ANNUAL GROSS SALES AND PROVIDE PRODUCT MOVEMENT AND SALES DATA REPORTS.

0001 GUARANTEED PERCENTAGE OF GROSS SALES The offeror shall guarantee an annual minimum dollar amount the Government will receive for the period of performance under this contract. The offeror shall also guarantee the Government a percentage of annual gross sales of reports to industry which are based on commissary sales data provided to the contractor by the Government. The guaranteed annual minimum dollar amount is based on the offerors estimated annual gross sales times the percentage of annual gross sales.

When the contractor's actual annual gross sales of reports to industry times the percentage offered exceeds the guaranteed annual minimum payment to the Government, the Government shall be entitled to and paid the greater of the two amounts.

Offerors shall enter below the estimated annual gross sales for all reports to be sold as a result of this contract, the guaranteed annual minimum payment to be paid to the Government, and the guaranteed percentage of actual annual gross sales to be paid to the Government.

BASIC CONTRACT PERIOD (1 JAN ~~1990~~ 1991 - 31 DEC ~~1992~~ 93)

| | | |
|---|---|---|
| OFFEROR'S ESTIMATED ANNUAL GROSS SALES | ~~1990~~ 91 | $3,300,000 |
| | ~~1991~~ 92 | $3,700,000 |
| | ~~1992~~ 93 | $3,900,000 |
| GUARANTEED ANNUAL MINIMUM PAYMENT TO THE GOVERNMENT. | ~~1990~~ 91 | $231,000 |
| | ~~1991~~ 92 | $296,000 |
| | ~~1992~~ 93 | $351,000 |
| GUARANTEED PERCENTAGE OF ANNUAL GROSS SALES TO BE PAID TO THE GOVERNMENT. | ~~1990~~ 91 | 7% |
| | ~~1991~~ 92 | 8% |
| | ~~1992~~ 93 | 9% |

Mod 3

## SECTION B

## SUPPLIES OR SERVICES AND PRICES/COSTS

FIRST OPTION PERIOD (1 JAN 19~~93~~94 - 31 DEC 19~~93~~94)

| | |
|---|---|
| OFFEROR'S ESTIMATED ANNUAL GROSS SALES | $ 4,500,000 |
| GUARANTEED ANNUAL MINIMUM PAYMENT TO THE GOVERNMENT | $ 450,000 |
| GUARANTEED PERCENTAGE OF ANNUAL GROSS SALES TO BE PAID TO THE GOVERNMENT | 10% |

SECOND OPTION PERIOD (1 JAN 19~~94~~95 - 31 DEC 19~~94~~95)

| | |
|---|---|
| OFFEROR'S ESTIMATED ANNUAL GROSS SALES | $ 4,750,000 |
| GUARANTEED ANNUAL MINIMUM PAYMENT TO THE GOVERNMENT | $ 475,000 |
| GUARANTEED PERCENTAGE OF ANNUAL GROSS SALES TO BE PAID TO THE GOVERNMENT | 10% |

SECTION C

DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

JOINT MILITARY COMMISSARY SERVICES

SALE OF COMMISSARY PRODUCT RECEIPT AND SALES DATA

1. PURPOSE: The purpose of this work statement is to define requirements for the sale of Army, Navy, Marines and Air Force commissary product sales data (scanning system) to a commercial firm (contractor). In exchange for the data the contractor will provide, to each military branch's commissary service, monetary payments, periodic product movement and sales data reports, and sufficient equipment and software to access and reproduce, and process that data for internal use only, as described herein. The contractor shall then offer, for sale, market reports, studies and analyses of the data received to all interested manufacturers and suppliers of resale products and all other interested firms. For information purposes, Technical Exhibit 1 lists each commissary along with their average monthly sales for Fiscal Year 1988.

2. SCOPE:

2.1 The military commissary services will make available to the contractor, product sales data for resale commissary items captured in computer scanning systems at Army, Navy, Marines and Air Force commissary resale activities designated herein. Scanning systems are National Cash Register (NCR) 9020 or 9150. Product movement/sales data as described in this work statement is defined as commissary front-end scanning item sales and movement data and does not include data developed from item receipt information at a warehouse or store. As consideration for this Government data, the contractor shall develop and furnish reports which track product movement and sales in military commissaries. In addition to the reports, the contractor shall provide payment to the Government for use of this data based on the amount proposed in Schedule B (Bid Schedule) and in accordance with Section C Paragraph 2.6 of this contract. In addition to the reports, the contractor shall provide the computer equipment and software needed for the services to read and process the report data. The Government shall retain limited rights to such reports as defined in Contract Clause 51, "Rights In Technical Data" and other provisions set forth in this contract.

2.2 PRODUCT MOVEMENT AND SALES DATA REPORTS PROVIDED TO THE GOVERNMENT: The contractor shall be responsible for processing and analyzing Government furnished product sales data for the purpose of tracking product movement and sales in military commissaries. The contractor shall develop and furnish to the Government the reports as set forth below. The cost for mailing, accumulating, processing, analyzing, preparation, reproduction, recording, printing and distribution of reports shall be borne by the contractor.

2.2.1 REPORTS INFORMATION. Reports provided to the Government shall, as a minimum, include the following:

(a) Summary of sales by total military commissary market, branch of service, by region and complex, in both dollars and units for all categories of items sold in the commissary.

(b) Recap by each major category and brand for total military commissary market, branch of service, and region and complex.

(c) Summary of fastest moving items in the military commissary market showing total annual volume, item size, case pack and number of commissaries in which stocked.

2.2.2 REQUIRED REPORTS. The following reports shall be provided to the Government. Overseas locations will be included only in the semiannual and annual ranking reports. (Note: All reports are due within 30 days after the frequency established for submittal of reports).

(a) A quarterly product ranking report on sold categories in units and dollars, (category reports the contractor sells to industry customers).

(1) Description of Brand/Size/UPC.
(2) Rank by packages sold.
(3) Share by packages sold.
(4) Percentage of total share volume contributed by stores that stock the brand and size.
(5) Rank by sales per point of distribution.
(6) Packages sold per point of distribution.
(7) Rank by dollar sales.
(8) Dollar sales.
(9) Share by dollar sales.

(b) A semi-annual ranking report on major categories in overseas stores. This will include comparisons, by branch of service, with a major East Coast CONUS store, for Europe, and a major West Coast CONUS store, for the Pacific. The contractor will select CONUS stores of comparable size and dollar sales as the overseas stores.

(c) An annual ranking report for all categories.

(d) A quarterly trend report on categories that the contractor sells to industry customers.

(1) Packages/sizes converted to equivalent units.
(2) Total unit volume.
(3) Total dollar sales.
(4) General brand information, ranked by brand.
Includes: Percentage share of units.
Unit volume of brand.
Dollar sales of brand.

(5) Brand/SKU detail.
Includes: Packages sold.
Percentage of total volume contributed by stores that stock the brand and size.
Prevailing high price.
Prevailing low price.

(e) A quarterly executive summary. A summary of major categories in ranking order of performance for product movement and sales.

(f) Selected and special reports. Includes product movement and sales reports for specific categories and shows trends of gains and losses. The Government will provide the contractor at least 30 days notice of the need for selected and special reports.

(g) Any reports the contractor provides to industry that are not addressed herein.

2.2.3 REPORT SUBMISSION. The contractor will provide the required reports in a format ready for input (via electronic means) into a contractor furnished computer system (work station) provided to each military commissary branch of service. In addition, the contractor will provide all reports, when they are due, on magnetic tape to each branch of service, at the service's option. Electronic reports and magnetic tapes will be submitted to the addresses of the respective military commissary branch of service as shown in paragraph 2.2.5 below. All reports are due within 30 days after the frequency established for submittal of reports.

2.2.3.1. For the Air Force Commissary Service, the reports will be furnished on both 9-track tape in formats capable of being read from the tape drives of AFCOMS' Wang VS-100 computers and also on media furnished by the contractor for the contractor provided computer system. The reports shall be adjusted by the contractor, at no cost to the Government, as necessary to be compatible with such later design computer systems as may become available in AFCOMS.

2.2.3.2. For the U.S. Marine Corps, the reports will be provided on streaming tape in a format capable of being read by NCR 9150 computers. The contractor will provide any software necessary to enable the USMC NCR 9150 computers to read and display the report data. The reports shall be adjusted by the contractor, at no cost to the Government, as necessary to be compatible with such later design computer systems as may become available in the USMC.

2.2.3.3. For the U.S. Army Troop Support Agency (TSA), the reports will be provided on media readable by the computer system provided by the contractor and also compatible with IBM AT class compatible or such later design computers as may become available in TSA.

2.2.3.4. For the U.S. Navy Resale & Services Support Office (NAVRESSO), the reports will be provided on media readable by the computer system provided by the contractor and also compatible with IBM AT class compatible or such later design computers as may become available in NAVRESSO.

2.2.4 REPORTS ASSISTANCE SERVICES. When requested, the contractor shall, at no cost to the Government, provide commissary activities with interpretation assistance of the Product Movement reports and the trends indicated in the various reports.

2.2.5. ADDRESSEES FOR REPORTS. Product Movement and Sales Data reports specified in paragraph 2.2.2 will be provided by the contractor to the Government at the locations set forth below:

(a) UNITED STATES AIR FORCE

HQ AFCOMS/DOM
Kelly AFB TX 78241-6290

(b) UNITED STATES ARMY

HQ USA TSA/DALO-TAC-M
ATTN: MERCHANDISING & MARKETING DIV.
Fort Lee VA 23801-6020

(c) UNITED STATES NAVY

NAVY RESALE AND SERVICES SUPPORT OFFICE (HQ NAVRESSO)
NAVAL STATION NEW YORK
ATTN: COG
Staten Island NY 10305-5097

(d) UNITED STATES MARINE CORPS

EAST COAST COMMISSARY COMPLEX
Bldg 1301
MCB Camp LeJune NC 28542-5002

WEST COAST COMMISSARY COMPLEX
Bldg 317
MCAS El Toro CA 92709-5002

(The USMC does not require any contractor furnished reports at its Washington, D.C. headquarters.)

2.3 RELEASE AND USE OF GOVERNMENT DATA BY THE CONTRACTOR.

2.3.1 The contractor shall not release raw product sales data obtained from the Government through this contract to any other commercial source for any reason. After receipt of the Government scanning data, this contract specifically requires the contractor to offer for sale, and sell refined market reports, studies and analyses of the data received from the Government to all interested manufacturers and suppliers of resale products and all other interested firms. The contractor shall not release refined market reports, studies and analyses of the data received from the Government to any firm or

individual free of charge nor for a nominal fee. The contractor shall offer the data equally to all interested firms at a fair and reasonable market price for all or specific categories of products. The contractor shall not engage in the sale of resale products to any military commissary activity or accept commissions or any contingent fees from manufacturers of products offered for resale in the commissaries.

2.3.2 Commissary product sales data obtained under this contract shall not be used to represent, in any manner, expressed or implied, that the products covered by such data are approved or endorsed by any element of the Government. Commercial advertisements of products reflected in this data shall include no claims based on sales made to military commissary resale activities. The contractor shall include this provision in all agreements and contracts for sale of market reports, studies and analyses of the data provided by the Government in this contract.

2.3.3 In January of each year the contractor shall provide the contracting officer a listing of all firms and individuals that have purchased military commissary product movement data reports from his firm during the previous calendar year. This listing shall reflect the product category report(s) purchased by those firms or individuals and the price charged for the product category report(s). Additionally, should any firms or individuals be denied any reports, the contractor shall include the names of those firms or individuals on the listing and the reason for denial.

2.4 <u>RELEASE AND USE OF PRODUCT MOVEMENT AND SALES DATA BY THE GOVERNMENT</u>.

2.4.1 Under the current law, military commissary product sales data cannot be released by the Government to any source outside the Government except by written agreement. Any such agreement requires payment to the Government for such information and shall specify the amount of such payment. This contract constitutes such an agreement contemplated under the law.

2.4.2 The Government shall not release reports provided by the contractor to any source outside of the Government for any reason.

2.4.3 Each of the branches of the military commissary service may for their own internal management use, generate reports using the same or similiar product sales data provided under this contract. These reports will not be provided to the contractor.

2.4.4 The Government reserves the right to release product movement data contained in internal reports to other commercial firms, provided the firm requesting the data is using the data specifically for developing computerized shelf space allocation/category plan-o-grams or other special projects for the Government. The firm requesting the information must sign an agreement stating that the data will not be used for commercial purposes in any other way and that the data cannot be given, sold, shown or released to other commercial sources for any reason.

2.5 <u>COLLECTION OF DATA REQUIRED BY THE CONTRACT</u>. On a monthly basis, the military commissary services will make available to the contractor product sales data for resale commissary items captured in computer scanning systems

at Army, Navy, Marines and Air Force commissary resales activities designated herein. Tape layout diagrams for the Air Force, Army, Navy and Marines are included in Technical Exhibit (TE) 2. Tape layout diagram for the Air Force, Army and Marines (TE 2, Page 1) are similiar, while the Navy (TE 2, Page 2) is different. On the last day of the month (close-out day), the Government will transfer from their computer systems the product sales scanning data onto contractor furnished cassette tapes. Tapes provided by the contractor must be compatible with the computer system of the commissary activity providing the data. The contractor will provide prepaid pouches or envelopes to the Government commissary activities so the cassette tapes can be mailed or shipped UPS to the contractor each month.

2.5.1 <u>COLLECTION OF DATA BEFORE CONTRACT PERFORMANCE</u>. Product movement data captured at scanners will be provided by the Government to the contractor, after contract award but before performance begins, so the contractor may mobilize for performance and establish a data base for generating the product movement reports required under this contract. The contractor will provide the necessary tapes and mailers to each commissary for this purpose.

2.6 <u>PAYMENT TO THE GOVERNMENT FOR DATA</u>. The contractor shall pay to the Government the awarded amounts as set forth on the Bid Schedule, Schedule B. The amount to be paid to the Government is the guaranteed percentage of the contractors estimated or actual gross sales (whichever is greater) received from industry for sale of Government product movement and sales data. Payments will be computed and paid monthly to each of the commissary services at the addresses shown below. The contractor shall provide each of the addressees a quarterly itemized statement containing, as a minimum, the total gross sales generated by this contract, percentage and dollar amount due each payee and the guaranteed percentage and dollar amount due each payee. Distribution of payment to each branch of service is set forth below:

(a) U. S. Air Force, 40 percent.

Payable To: Treasurer of the United States
Mail To: HQ AFCOMS/AC
Kelly AFB, TX 78241-6290

(b) U. S. Army, 30 percent.

Payable To: Finance and Accounting Officer Fort Lee, VA
Mail To: U.S. ARMY TROOP SUPPORT AGENCY
ATTN: DALO-TAB-A
Fort Lee, VA 23801-6020

(c) U. S. Navy, 25 percent.

Payable To: Treasurer of the United States
Mail To: Navy Resale and Services Support Office
Naval Station New York
ATTN: CAFD
Staten Island, NY 10305-5097

(d) U. S. Marine Corps, 5 percent.

Payable To: Treasurer of the United States
(Note: Make a 50/50 Payment to Each Address below)
Mail To: East Coast Commissary Complex
Bldg 1301
MCB Camp LeJune, NC 28542-5002

West Coast Commissary Complex
Bldg 317
MCAS El Toro, CA 92709-5000

2.7. <u>CONTRACTOR FURNISHED EQUIPMENT TO PROCESS REPORTS</u>: The contractor will provide each military commissary branch of service (at the locations specified in paragraph 2.7.7 below) with computer equipment and software programs. The type of computer system will be determined by the offeror and submitted with their Technical Proposal. The equipment and software programs shall be sufficient to enable each branch of service to electronically retrieve the reports furnished on the media selected by the contractor, then record and process the data contained therein, and electronically copy on electromagnetic media, or print on paper, parts or all of the reports specified above, or incremental combinations of such reports.

2.7.1 The equipment and software shall have the capability to retrieve all reports and data on product movement, by commodity code/group, individual items (UPC) and by service, with specific ability to access by UPC number.

2.7.2 The equipment and software furnished to the services shall be fully compatible with the media on which the reports are furnished and capable for use, through contractor provided data interchange translation programs, with IBM PC-DOS/MS-DOS/UNIX clone compatible computers, which are currently Zenith Z-248 and Sperry AT class computers using microprocessors with the Intel 80286 chip. Further, the contractor agrees to upgrade, whenever necessary, and at no cost to the military commissary services, the equipment he provides, to ensure its continuing compatibility with the small computer systems in use within the commissary services.

2.7.3 The contractor furnished equipment and software will be provided and installed at no cost to the Government at the locations indicated in para 2.7.7 for each military commissary branch of service not later than at time of first report delivery.

2.7.4 Title to the contractor furnished equipment will remain with the contractor on this contract. The equipment and shall be removed from the Government's premises by the contractor at the end of the contract, unless another such contract is subsequently awarded to the contractor.

2.7.5 All costs associated with the contractor furnished computer systems, including acquisition costs, all software, software/program changes, installation charges, shipping charges, maintenance, replacement of components, and all other costs associated with the operation of the computer

systems and software will be the responsibility of the contractor. The contractor will provide on-site training to Government personnel on the operation of the contractor furnished computer system and software. All costs to provide this training (including travel) will be borne by the contractor.

2.7.6 The Government will provide the necessary space for placement of the computer system and electricity at no charge to the contractor. The Government will take reasonable care to prevent damage and/or loss of the contractor owned equipment.

2.7.7 The equipment and software will be provided by the contractor to the Government locations as set forth below:

(a) UNITED STATES AIR FORCE

HQ AFCOMS/DOM
Kelly AFB TX 78241-6290

(b) UNITED STATES ARMY

HQ USATSA/DALO-TAC-M
ATTN: MERCHANDISING & MARKETING DIV.
Fort Lee VA 23801-6020

(c) UNITED STATES NAVY

NAVY RESALE AND SERVICES SUPPORT OFFICE (HQ NAVRESSO)
NAVAL STATION NEW YORK
ATTN: COG
Staten Island NY 10305-5097

(d) UNITED STATES MARINE CORPS

NOTE: The USMC does not require any contractor furnished equipment at its Washington, D.C. headquarters, nor at its East Coast or West Coast Complexes. The USMC does require the contractor furnished software discussed in paragraph 2.2.3.2 above to be furnished to the following locations:

EAST COAST COMMISSARY COMPLEX
Bldg 1301
MCB Camp LeJune NC 28542-5002

WEST COAST COMMISSARY COMPLEX
Bldg 317
MCAS El Toro CA 92709-5002

3. CARE OF CONTRACTOR FURNISHED COMPUTER EQUIPMENT The Government is responsible for the care of contractor furnished computer equipment. Damage caused by the Government as a result of neglect, misuse, abuse or accident (excluding an act of God or fair wear and tear) will be the responsibility of the Government. Repair or replacement costs of the equipment or software will be deducted by the contractor from the monthly payment to the branch of

service responsible for the incident. Upon expiration of this contract the contractor will be responsible for removal, and all removal costs, of all contractor owned computer equipment and associated hardware, unless the contractor is the successful contractor on a follow-on contract for the same or similiar services.

4. PERIOD OF PERFORMANCE Because of initial start-up costs to be incurred by the contractor, this contract will be written for a basic three year period with two one year option periods.

ADDITIONAL CONTRACT CLAUSES

1. FAR 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT-SERVICES (APR 84)

(a) The Government may extend the term of this contract by written notice to the Contractor within the time specified in the Schedule; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause and any extensions of performance accomplished under AF FAR Sup 52.237-9000 (contained elsewhere in this Section I), shall not exceed 63 months.

2. STATUTORY COMPENSATION PROHIBITIONS AND REPORTING REQUIREMENTS RELATING TO CERTAIN FORMER DEPARTMENT OF DEFENSE (DOD) EMPLOYEES (APR 1988) (DFARS 52.203-7002)

(a) Definitions. Terms used in this clause are defined at paragraph 3.170-1 of the Defense Federal Acquisition Regulation Supplement (48 CFR Chapter 2).

(b) Prohibition on compensation.

(1) 10 U.S.C. 2397b and 2397c prohibit a major defense contractor from offering or providing any compensation valued in excess of two hundred fifty dollars ($250) to a former Department of Defense (DOD) official who left DOD service on or after 16 Apr 1987, and who, while employed by DOD, performed procurement-related functions in connection with that same defense contractor. This prohibition runs for the two-year period beginning on the date of such person's separation from service in DOD.

(2) The Contractor, if a major defense contractor, agrees not to provide, for such two-year period, any compensation to such a former DOD official.

(3) DOD employees may request from their Defense Agency Ethics Official (DAEO) a written opinion on the applicability

comply with the safety rules of that Government installation, in effect on the date of this contract.

c. The Contracting Officer may, by written order, direct additional AFOSH and safety and accident standards as may be required in the performance of this contract and any adjustments resulting from such direction will be in accordance with the Changes clause of this contract.

d. Any violation of these safety rules and requirements, unless promptly corrected as directed by the Contracting Officer, shall be grounds for termination of this contract in accordance with the Default clause of this contract.

8. EXTENSION AFTER PERFORMANCE (APR 84) (AF FAR SUP 52.237-9000)

Notwithstanding any other clause of this contract, including option clauses, if if offers have been solicited for the continuation of the services provided under this contract, the Government may extend the then current contract performance period for not less than one month nor more than three months onthe same terms and conditions as applicable to the then current performance period. a written notice of an extension under this clause shall be furnished to the Contractor not less than 15 days prior to the expiration of the existing contract.

9. EXERCISE OF OPTION (ATC FAR SUP 52.217-9000)

If the Government exercises its option to extend the terms of the contract as provided in Additional Contract Clause No. 1, FAR 52.217-9, the contracting officer will effect that option by a written notice mailed (or otherwise furnished) to the contractor no less than 15 calendar days prior to the expiration of the contract. This option exercise may be subject to the "Availability of Funds" clause incorporated elsewhere in this contract.

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | J | 1

2. AMENDMENT/MODIFICATION NO. P00003 | 3. EFFECTIVE DATE 90OCT12 | 4. REQUISITION/PURCHASE REQ. NO. F9205983090001 | 5. PROJECT NO. (If applicable)

6. ISSUED BY CODE

3303 CONTRACTING SQUADRON
BLDG 399
RANDOLPH AFB TX 78150-5000

7. ADMINISTERED BY (If other than Item 6) CODE

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and Zip code)

MILITARY AUDITS OF MARKET INFORMATION, INC. 00VEM7S
1732 WISCONSIN AVENUE, NW
WASHINGTON DC 20007

CODE | FACILITY CODE

(x) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (See item 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO.
F41689891001

10B. DATED (See item 13)
89OCT03

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Off[ers] [ ] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as am[ended] by one of the following methods:
(a) By completing Items 8 and 15, and returning ___ copies of the amendment; (b) By acknowledging receipt of this amen[dment] on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicit[ation] and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF O[FFERS] PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you des[ire] to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or lette[r] makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specifie[d].

12. ACCOUNTING AND APPROPRIATION DATA (If required)

57X8420 76EA S660700 (EAC 59102 PROJ RAN 72)

NET INC .0

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACT/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. DESCRIBED IN ITEM 14.

| (x) | |
|---|---|
| | A. This change order is issued pursuant to: (Specify authority) The changes set forth in Item 14 are made in th[e] contract order no in item 10A. |
| | B. The above numbered contract/order is modified to reflect the administrative changes (such as changes in payi[ng] office, appropriation data, etc.) set forth in Item 14 pursuant to the authority of FAR 43.103(b). |
| X | C. This supplemental agreement is entered in pursuant to authority of: MUTUAL AGREEMENT OF CONTRACTING PARTIES |
| | D. Other (Specify type of modification and authority) |

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return ALL copies to the issuing off[ice].

14. Description of amendment/modification (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

POC: FORSMAN, DAVID J.
PHONE: 512 652-2491

SEE SCHEDULE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore cha[nged,] remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Edward M. Downey
President

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
DAVID J. FORSMAN

15B. CONTRACTOR/OFFEROR
Edward M. Downey
(Signature of person authorized to sign)

15C. DATE SIGNED
10/30/90

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED
9 Nov 90

STANDARD FO[RM]

THIS MODIFICATION IS WRITTEN TO REALIGN THE PERFORMANCE PERIOD.

A. REFERENCE CONTRACT SECTION C, PARA 2.1, LAST LINE: CHANGE CONTRACT CLAUSE TO READ "62" IN LIEU OF AS PREVIOUSLY SPECIFIED. THIS CONFORMS TO MODIFICATION P00001, DATED 89 OCT 17 (SECT I, PG 3 §R10/89é)

B. REFERENCE SECTION A, ARTICLE I, PARA 2; SECTION B, PAGES B-1 & B-2, BASIC CONTRACT PERIOD AND OPTIONS SCHEDULE; AND SECTION F, PARA 2: ALL CALENDAR YEAR REFERENCES LOCATED HEREIN AND THROUGHOUT THE CONTRACT DOCUMENT ARE HEREBY CHANGED TO READ AS FOLLOWS;
"1990" SHALL NOW READ "1991". "1991" SHALL NOW READ "1992".
"1992" SHALL NOW READ "1993". "1993" SHALL NOW READ "1994".
"1994" SHALL NOW READ "1995".

THIS CONFORMS THE CONTRACT TO A RE-ALIGNED START DATE OF 91 JAN 01.

C. THIS REFORMATION IS ENACTED AT NO COST TO EITHER CONTRACTED PARTY. MUTUALTIY OF CONSIDERATION IS PROVIDED BY THE CONTRACTOR'S AGREEMENT TO THE REVISION IN PERFORMANCE DATES AND THE GOVERNMENT'S AGREEMENT TO ACCEPT THE PERFORMANCE CRITERIA AS ORIGINALLY SPECIFIED.

D. IT IS HEREIN AFFIRMED AND MUTUALLY AGREED TO BY THE CONTRACTING PARTIES THAT THIS SUPPLEMENTAL AGREEMENT REPRESENTS FULL, EQUITABLE AND FINAL SETTLEMENT FOR THOSE ISSUES AS PREVIOUSLY DESCRIBED ABOVE. FURTHERMORE, THE CONTRACTOR HEREIN RELEASES THE GOVERNMENT FROM ANY AND ALL CLAIMS, DISPUTES OR APPEALS, LEGAL OR EQUITABLE, EXPRESSED OR IMPLIED, KNOWN OR UNKNOWN, ARISING FROM OR PURSUANT TO ALL AREAS AS INCORPORATED BY THIS SUPPLEMENTAL AGREEMENT, THOSE ISSUES NECESSITATING IT'S ENACTMENT OR DELAYS ENCOUNTERED PRIOR TO OR THERE FROM.

E. ALL OTHER TERMS AND CONDITIONS OF THE CONTRACT DOCUMENT REMAIN IN FULL FORCE AND EFFECT AS PREVIOUSLY SPECIFIED.

END PAGE