# APPELLANT'S RESPONSE TO APPELLEE'S MOTION TO DISMISS

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

Appeal No. 96-1270

---

**MARKETING AND MANAGEMENT INFORMATION, INC.,**
*Appellant,*

v.

**Maj. Gen. Richard E. Beale, Jr.,**
**Director, DEFENSE COMMISSARY AGENCY,**
*Appellee,*
and
**A.C. NIELSEN COMPANY,**
and
**INFORMATION RESOURCES, INC.,**
and
**MANAGEMENT SCIENCE ASSOCIATES, INC.,**
*Intervenors.*

---

**APPEAL FROM A DECISION OF THE GENERAL SERVICES BOARD OF CONTRACT APPEALS IN GSBCA NOS. 13466-P, 13469-P AND 13470-P DATED FEBRUARY 23, 1996**

---

**ALAN M. GRAYSON, Esq.**
**JAMES S. DELSORDO, Esq.**
**Grayson & Associates**
Suite 300
1568 Spring Hill Road
McLean, Va 22102
(703) 442-0327

Attorneys for Appellant
**MARKETING & MANAGEMENT INFORMATION, INC.**

## I. Introduction

Appellant Marketing & Management Information, Inc. ("MMI") opposes the pending Motion to Dismiss this appeal as moot, for the simple reason that the appeal is not moot. It is clear from the Motion to Dismiss that the Government is laboring under a misapprehension -- that the five-year sales contract awarded to MMI (and under review here) has a clause permitting termination for the convenience of the Government. It doesn't, and no such clause is required by law. Therefore, when the Motion argues that cancellation of the solicitation that gave rise to MMI's contract somehow "constructively terminated the contract for the convenience of the Government," Motion at 4, this is just wrong. The solicitation was superseded by the contract award to MMI, there has been (and can be) no cancellation of the contract, and no action to "cancel" the solicitation can have any effect on MMI's vested contract rights.

This appeal has been fully briefed, and the Court can refer to those briefs for a full discussion of the background and current status of the MMI contract. Briefly, on October 26, 1996, the U.S. Defense Commissary Agency ("DeCA") awarded a five-year sales contract (not a procurement contract) to MMI. The sales contract has no clause permitting termination for the convenience of the Government. The U.S. General Services Board of Contract Appeals ("GSBCA"), acting without jurisdiction and directly contrary to four Federal Circuit decisions, told DeCA that MMI's contract required DeCA to obtain a "delegation of procurement authority" ("DPA") from GSA or DOD "and proceed in accordance with statute and regulation." GSBCA Decision at 47 (emphasis added). MMI maintains that the GSBCA had no jurisdiction to make this ruling, and that DeCA does not

need to obtain a DPA. As DeCA itself has stated to the Court, "the GSBCA's decision was also adverse to the position taken by DeCA before the GSBCA." DeCA Brief at 3. In other words, MMI's interests are aligned with DeCA's, even though the U.S. Justice Department elected not to exercise its appeal rights on behalf of DeCA. Id. The only cloud over MMI's contract is the GSBCA's improper decision.

Now, one year after contract award, DeCA issued a three-sentence "amendment" to the solicitation that led to award of the MMI contract. It states, in its entirety:

> A. Based on the current and projected needs of the agency, it has been determined that the requirements set forth in this solicitation no longer adequately describe the needs of the agency. The solicitation is hereby canceled in its entirety.
>
> B. No acknowledgment of this amendment is required.

Nothing in this amendment even refers to MMI's contract, much less "constructively terminate[s] the contract for the convenience of the Government." Motion at 4.[1]

---

[1] The Government's repeated allusions to "termination for convenience" appear to be references to the Termination for Convenience clause under the Federal Acquisition Regulation, 48 C.F.R. § 52.249-2 (1995). The solicitation is in the Appendix to MMI's brief, and a copy is attached in an appendix hereto. The Court can review it to confirm that this clause is nowhere to be found -- because this is a sales contract, not an "acquisition." There is no requirement under law to include this clause in any sales contract. See American Watercooling Equipment Corp., GSBCA No. 9083-TD, 89-1 BCA ¶ 21,364; Monarch Enterprises, VABCA Nos. 2239 & 2296, 86-3 BCA ¶ 19,281; cf. G.L. Christian & Associates v. United States, 312 F.2d 418 (Ct. Cl. 1963), aff'd, 320 F.2d 345 (_____). As the very heading of the Government's Motion to Dismiss before the GSBCA stated, "This Procurement Is Not Subject to the Federal Acquisition Regulation." DeCA's GSBCA Motion to Dismiss at 16, A16 ("A__" refers to the appendix attached hereto). The Government emphatically stated: "The provisions of the Federal Acquisition Regulation **do not apply** to this procurement." Id. (emphasis in original).

Only the Contracting Officer can even attempt to terminate a contract for convenience, and here he has no authority to do so. In essence, the Motion to Dismiss asks this Court to dismiss an appeal on the basis of an action that has never taken place, and cannot take place.

Apart from this, the Government is not a proper party to request dismissal, as explained further below. Therefore, the Motion to Dismiss should be denied.

## II. Argument

### A. The Issues Involved in this Appeal are Not Moot.

As the Government concedes, the Court will grant dismissal of an appeal for mootness only when "[a]n event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." Nasatka v. Delta Scientific Corp., 58 F.3d 1578 (Fed. Cir. 1995), citing Church of Scientology v. United States, 506 U.S. 9 (1992). It is obvious that sustaining this appeal will grant effective relief to MMI, and indeed to DeCA as well. Vacating the GSBCA's decision will remove the cloud over MMI's contract. Any action taken concerning the solicitation does not change that.

The Government makes the following argument to the contrary:

> [E]ven if this Court's decision vacated the GSBCA's decision and effectively re-instated MMI as the contract awardee, that decision would not grant any effectual relief to MMI. DeCA's cancellation of the solicitation effectively terminated the (currently-void) contract. The basis for DeCA's cancellation of the solicitation -- that the requirements set forth in the solicitation no longer adequately describe the needs of the agency -- constructively terminated the contract for the convenience of the Government. The cancellation mandates a termination for convenience because performance of the contract, by

> definition, would not be in the Government's best interests. Therefore, if this Court's decision re-instated the contract, then, as compelled by the cancellation of the procurement, DeCA would immediately terminate the contract for convenience.

Motion at 4. This is wrong, for numerous reasons:

- MMI does not need "effective reinstatement" as the contract awardee -- it is the contract awardee. MMI maintains that the GSBCA's ruling concerning the contract was without jurisdiction, and invalid.

- There is no such thing as "effectively terminating" a contract, whether or not it is "currently void." Either DeCA has terminated the contract, or it has not. It is safe to say that an amendment to a solicitation following award of a contract -- an amendment that does not even refer to the contract -- does not "effectively terminate" the contract.

- If the requirements set forth in a solicitation "no longer adequately describe the needs of the agency," it does not follow that an awarded contract does not or cannot satisfy the needs of the agency. In this case, the Contracting Officer has never said that the contract does not "satisfy" the needs of the agency. Even if this were true, then contracts, like solicitations, can be modified.

- The claim that the "basis for DeCA's cancellation" somehow "constructively terminated the contract" is ridiculous. DeCA simply has no right to terminate the contract for its convenience, "constructively" or otherwise.

- The statement that cancellation of the solicitation "mandates" termination for convenience because performance "by definition" would not be "in the Government's best interests" is equally unfounded. DeCA simply has never said this. On the contrary, the record is replete with statements from DeCA explaining that performance of this requirement is very important to it. As DeCA's witness testified under oath, "We need this done. We need this done. We need this done." GSBCA Hearing Tr. at 51-52, 211 & 253, A112-A115; see also DeCA's GSBCA Post-Hearing Brief at 2.

- In one final effort to lift itself by its bootstraps, the Motion states that a decision by this Court in MMI's favor would "compel" DeCA to "immediately" terminate the contract for convenience. This is utterly speculative, no one at DeCA ever has said this, and DeCA has no such right under the contract.

- If all of this were not enough, the Court should bear in mind the terms of this sales contract. The contract requires MMI to pay DeCA millions of dollars a year, and provide free services (which DeCA may or may not use). Unless the federal deficit has been wiped out and the federal debt paid off, it seems premature to say that the Government has no need for money.[2]

Just as a decision in favor of MMI here would grant effective relief to MMI, it also would grant effective relief to the Government, although the Government seems oblivious to this. In a case where an appeal is subject to dismissal as moot, the Government remains liable for the GSBCA protesters' attorneys' fees. PRC, Inc. v. Secretary of the Air Force, 64 F.3d 644 (Fed. Cir. 1995); see 40 U.S.C. § 759(f)(5)(C) (1994). In this case, DeCA has estimated these fees at over $1 million. The only way that the Government will not have to pay those fees is if MMI prevails in this appeal.[3]

Under the mistaken impression that the MMI contract can be terminated for convenience, the Government concedes that it is liable for MMI's termination costs unless MMI prevails in this appeal. Motion at 4 n.2. This is another reason why this appeal is not moot. The Government wrongly claims that "[p]erformance of the contract was stayed

---

[2] If DeCA did, at some point in the future, inform MMI that DeCA were refusing to honor the sales contract and accept its money and free services, then given the absence a termination for convenience clause, DeCA would owe MMI approximately $100 million. See Northern Helex Co. v. United States, 524 F.2d 707 (Ct. Cl. 1975). As noted above, however, DeCA has never said this, notwithstanding the unfounded speculation in the Motion to Dismiss.

[3] It seems incredible that the Government did not consider this before filing its Motion to Dismiss. Not only does the Government cite PRC, Motion at 5, but the Government attorney in this case, John E. Erickson III, Esq., was the losing attorney in PRC, where this Court ordered the Government to pay the attorneys' fees. Id.

immediately upon award," and therefore MMI supposedly "could not have incurred any [termination] costs." Id. This is wishful thinking, piled on speculation, heaped on mistake. If the Government did have the power to terminate MMI's contract, and the Government did so, the termination costs to the Government would be substantial. Under those circumstances, only MMI's success in this appeal would avoid Government liability for those costs.[4]

In the face of all of this, the Motion argues that "[t]he cancellation of a solicitation following the award of a contract plainly moots the appeal of a decision granting a protest regarding that award. PRC, Inc. v. Widnall, 64 F.3d 644, 645 (Fed. Cir. 1995)." The PRC case was a procurement, however, where the Contracting Officer could terminate the awarded contract for the Government's convenience, and did terminate the awarded contract for the Government's convenience. This case involves a sales contract, where the Contracting Officer can't terminate the awarded contract for the Government's convenience, and hasn't attempted to terminate the awarded contract for the Government's convenience. In PRC, the Government had no further need for the goods and services it was buying; here the Government still has a need for the money that it is due to receive from MMI under the contract.[5] PRC and this case are as similar as hats and ants. The Federal Circuit never has

[4] In view of this, one really has to wonder why the Government has requested that this appeal be dismissed, especially when MMI is seeking to uphold DeCA's action.

[5] PRC also did not involve a jurisdictional or DPA or voidness issue, as is the case here. See Network Solutions, Inc., GSBCA Nos. 11498-P, 11532-P, 92-3 BCA ¶ 25,083, 1992 GSBCA LEXIS 204 (Apr. 30, 1992), vacated sub nom. Electronic Data Sys. Corp. v.

ruled that cancellation of a solicitation for a sales contract, without termination of the contract, somehow moots an appeal concerning the contract. The relief sought in the Motion to Dismiss not only is illogical, but unprecedented. The appeal is not moot, because there clearly is a "sufficient prospect" that the Federal Circuit's decision "will have an impact on the parties." Flagstaff Med. Ctr., Inc. v. Sullivan, 962 F.2d 879, 884 (9th Cir. 1992); see also Airline Pilots Ass'n Int'l v. UAL Corp., 897 F.2d 1395, 1396 (7th Cir. 1990).

Termination of the solicitation is meaningless in this situation. The contract is a binding, integrated agreement. "A binding integrated agreement discharges prior agreements . . . ." Restatement (Second) of Contracts § 213(1) (1981). The U.S. Supreme Court recognized this principle over 100 years ago: "[t]he written contract merged all previous negotiations, and is presumed in law to express the final understanding of the parties." California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 26 (1990), citing Brawley v. United States, 96 U.S. 168 (1878). "Cancellation" of the solicitation at this point is like the International Olympic Committee announcing "we have canceled plans for the 100-meter dash," one year after the event has been run.

**B. DeCA May Not Move for Dismissal of this Appeal, Because By Its Own Admission it is Not a Proper Party, and Because it Has Expressly Informed the Court that it "Does Not Take Any Position" Regarding the Appeal**

In the decision below, the GSBCA sided with the protesters, A.C. Nielsen Co.

---

Rice, 988 F.2d 128 (Fed. Cir. 1992) (table).

("Nielsen"), Information Resources, Inc. ("IRI"), and Management Science Associates, Inc. ("MSA"), against MMI and DeCA. MMI appealed. Having been informed that MMI would appeal, DeCA decided to let MMI shoulder this burden. As DeCA already has stated to the Court:

> [I]t appears that DeCA should not have been named as either appellee or appellant. Considering that the GSBCA's decision was adverse to DeCA, it appears strongly that DeCA should not be named as the "appellee" in this appeal. . . . [6]
>
> DeCA advises the court that DeCA does not take any position regarding any substantive issue presented by MMI's appeal. Consistent with 41 U.S.C. § 607(g)(1)(A), the Government determined not to appeal the GSBCA's decision. Inherent in that decision was the decision not to take positions in this Court regarding any of the substantive issues presented by this appeal. . . .
>
> Because the GSBCA's decision was adverse to DeCA, DeCA plainly does not desire to assert any arguments in favor of the GSBCA's decision. Accordingly, DeCA does not take any position regarding the substantive issues presented on appeal.

DeCA Brief at 4-5 (emphasis added). Since in its own words DeCA is "[n]either appellee [n]or appellant," it is not a party, and it "does not have standing" to file a motion asking the Court for any ruling. U.S. Philips Corp. v. Windmere Corp., 971 F.2d 728, 731 (Fed. Cir. 1992). Even if DeCA were a party, it has waived any right to ask the Court for relief by

---

[6] DeCA is referring to the fact that, as both MMI and DeCA have informed the Court, the official caption identifying DeCA as an appellee is in error. Id. The Federal Circuit's Practice Note to Fed. R. App. P. 12 states, in part, "Parties included in the trial court title having an adverse interest to the appellant but not cross appealing shall be deemed appellees." (Emphasis added.) DeCA has disavowed any adverse interest to MMI. "[I]nclusion on the 'official caption' does not establish status as a party before this court." U.S. Philips Corp. v. Windmere Corp., 971 F.2d 728, 730 (Fed. Cir. 1992).

expressly stating that it "does not take any position" regarding the issues presented in this appeal. Miree v. DeKalb County, 433 U.S. 25 (1977); In re "Agent Orange" Product Liability Litigation, 506 F. Supp. 737 (E.D.N.Y. 1979), rev'd on other grounds, 635 F.2d 987 (2d Cir. 1980), cert. denied, 454 U.S. 1128 (1981).[7]

**WHEREFORE** MMI requests that the Court deny DeCA's motion for the grounds stated and, in any case, that the Court not enter the draft Order in the form presented.[8]

Respectfully submitted,

Alan M. Grayson, Esq.
James S. DelSordo, Esq.
Grayson & Associates
Suite 300
1568 Spring Hill Road
McLean, Virginia 22102
(703) 442-0327

Counsel for Appellant Marketing and Management Information, Inc.

Date: 25 October 1996

[7] It should be noted that even if the Motion to Dismiss were meritorious, the draft Order does not conform to the arguments in the motion. As noted in the PRC decision cited by DeCA, when an appeal is dismissed as moot, the decision from which the appeal must be vacated. PRC, 64 F.3d at 646, citing United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950). "The established practice of the Court" in dealing with a moot case "is to reverse or vacate the judgment below and remand with a direction to dismiss. That was said in Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, to be 'the duty of the appellate court.' That procedure . . . eliminates a judgment, review of which was prevented through happenstance." Munsingwear, 340 U.S. at 39-40. The draft Order mistakenly contains no such provision.

[8] If the Court would like to have this Motion addressed further in oral argument on the appeal, MMI would be happy to do so.

## CERTIFICATE OF INTEREST

Pursuant to Rules 47.4 and 27(b) of the Rules of the United States Court of Appeals for the Federal Circuit ("Fed. Cir. R.") Appellant MMI, by undersigned counsel, respectfully provides as follows:

1. The full name of every party or amicus represented by the undersigned counsel is: **Marketing and Management Information, Inc.**

2. The Name of the real party in interest represented by the undersigned counsel is: **Marketing and Management Information, Inc.**

3. The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus curiae represented by the undersigned counsel are: **None.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: **Alan M. Grayson, James S. DelSordo, and Law Offices of Alan M. Grayson, d/b/a Grayson & Associates**

Respectfully submitted,

Date: 25 October 1996

Alan M. Grayson, Esq.
James S. DelSordo, Esq.
Grayson & Associates
Suite 300
1568 Spring Hill Road
McLean, Virginia 22102
Counsel for Appellant Marketing and Management Information, Inc.

**CERTIFICATE OF SERVICE**

I certify that, this 25th day of October, 1996, copies of the foregoing Response to Appellee's Motion to Dismiss were served, by telecopy (brief only) and U.S. Mail, upon:

John C. Erickson III, Department of Justice, 550 11th Street, N.W., Room 9022, Washington, DC 20530, fax (202) 307-0972;

Michael P. Chiffolo, Office of General Counsel, Defense Commissary Agency, 1300 E Avenue, Fort Lee, VA 23801-1800, fax (804) 734-8529;

William W. Goodrich, Arent, Fox, Kintner, Plotkin & Kahn, 1050 Connecticut Ave., N.W., Washington, DC 20036-5339, fax (202) 857-6395;

Joseph P. Hornyak, Sonnenschein, Nath & Rosenthal, 1301 K Street, N.W., Suite 600, Washington, DC 20005, fax (202) 408-6399; and

Pat Cardwell, Cohen & White, 1055 Thomas Jefferson St., N.W., Suite 504, Washington, DC 20007, fax (202) 342-6147.

James S. DelSordo

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

1. REQUISITION NUMBER: ONLINE-9166-0001
PAGE 1 OF 25

2. CONTRACT NO.: DECA04-00-C-0026
3. AWARD/EFFECTIVE DATE: 19 May 2000
4. ORDER NUMBER:
5. SOLICITATION NUMBER: DECA01-99-R-0069
6. SOLICITATION ISSUE DATE: 07/14/99

7. FOR SOLICITATION INFORMATION CALL:
a. NAME: Lawrence P. Hahn
b. TELEPHONE NUMBER (No collect calls): (804) 734-8521
8. OFFER DUE DATE/LOCAL TIME: 09/10/99 4:00 p.m.

9. ISSUED BY — CODE: DECA01
DEFENSE COMMISSARY AGENCY
CONTRACT MANAGEMENT BUSINESS UNIT
1300 E AVENUE
FORT LEE VA 23801-1800

10. THIS ACQUISITION IS
☒ UNRESTRICTED
☐ SET ASIDE: % FOR
☐ SMALL BUSINESS
☐ SMALL DISADV. BUSINESS
☐ 8(A)
SIC: 7375
SIZE STANDARD: $18.0

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
☐ SEE SCHEDULE

12. DISCOUNT TERMS:

☒ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING: S10

14. METHOD OF SOLICITATION
☐ RFQ ☐ IFB ☒ RFP

15. DELIVER TO — CODE: HQCAAA
DECA COMMISSARY AGENCY
1300 E AVENUE
FORT LEE VA 23801-1800

16. ADMINISTERED BY — CODE: EMPTY

17a. CONTRACTOR/OFFEROR — CODE: 1JHN4 — FACILITY CODE:
Information Resources, Inc.
150 N. Clinton Street
Chicago, IL 60661
DUNS 094738267

18a. PAYMENT WILL BE MADE BY — CODE: DFAS
DEFENSE FINANCE & ACCTG SVC "EFT: T"
DFAS CO LCOC
P O BOX 369016
COLUMBUS OH 43236-9016

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☒ SEE ADDENDUM Page 24

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| 0001 | Subscription to provide Access to an Information Retrieval Database, in accordance with the attached Statement of Work.<br><br>BASE TERM: May 19, 2000 through October 10, 2000. | 1.00 | JB | $110,868.00 | $110,868.00 |

(Attach Additional Sheets as Necessary)

25. ACCOUNTING AND APPROPRIATION DATA: See Payment Clause - Page 24

26. TOTAL AWARD AMOUNT (For Govt. Use Only): $527,430.00

☒ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☒ ARE ☐ ARE NOT ATTACHED.

☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

☒ 29. AWARD OF CONTRACT: REFERENCE Your Amended OFFER DATED 9 May 00. YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: 0001 & 0002

30a. SIGNATURE OF OFFEROR/CONTRACTOR: [signature]

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER): [signature]

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT): TED C. FILE Sr. VP, Military
30c. DATE SIGNED: 5/12/00

31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT): LAWRENCE P. HAHN
31c. DATE SIGNED: 19 MAY 00

32a. QUANTITY IN COLUMN 21 HAS BEEN
☒ RECEIVED ☐ INSPECTED ☐ ACCEPTED AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

33. SHIP NUMBER
PARTIAL FINAL

34. VOUCHER NUMBER

35. AMOUNT VERIFIED CORRECT FOR

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE

32c. DATE

36. PAYMENT
☐ COMPLETE ☐ PARTIAL ☐ FINAL

37. CHECK NUMBER

38. S/R ACCOUNT NUMBER

39. S/R VOUCHER NUMBER

40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

42a. RECEIVED BY (Print)

41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER

41c. DATE

42b. RECEIVED AT (Location)

42c. DATE REC'D (YY/MM/DD)

42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION

SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT

STANDARD FORM 1449 (10-95)
Prescribed by GSA FAR (48 CFR) 53.212



AMENDMENT 0003

| ITEM | DESCRIPTION | QUANTITY | U/I | U/P | AMOUNT |
|---|---|---|---|---|---|
| 0001 | (Continued) | | | | |
| 0002 | same as CLIN 0001<br>TERM: October 11, 2000 through April 13 2002. | 1.00 | JB | $416,562.00 | $416,562.00 |

**AWARD NOTES:**

1. Award is made for CLIN 0001 for the performance period of 19 May 2000 through 10 October 2000; and CLIN 0002 for the performance period of 11 October 2000 through 13 April 2002.
2. This award incorporates by reference the contractors proposal dated 09 September 1999, as amended on 14 February 2000 and 09 May 2000.
3. This award incorporates by reference the Subscription Agreement executed between IRI & DeCA to purchase the DeCA Raw Product Movement Data, dated 03 June 1999.

| | Acquired Elements | CLIN 0001<br>05/19/00 thru 10/10/00 | CLIN 0002<br>10/11/00 thru 04/13/02 |
|---|---|---|---|
| **Software** | Oracle Analyzer Software<br>30 users<br>Software Port (1 Per 5 users) | *$899 per workstation*<br>**$26,970.00**<br>*$2,069.33 per Port*<br>**$12,416.00**<br>*CPU Storage $1,006 per Port*<br>**$6,036.00** | *$3,352.50 per workstation*<br>**$100,575.00**<br>*$7,714.50 per Port*<br>**$46,287.00**<br>*CPU Storage $3,750 per Port*<br>**$22,500.00** |
| **Databases** | Custom Region Databases for DeCA with DeCA, Food and Mass Merch. Data in One Database. Initial Setup of Database Reports.<br>Adjust For West/Northwest Mass Region Unavailable. | **$64,384**<br>**($6,438)** | **$240,000**<br>**($15,000)** |
| **Communications** | 56kb Leased Line | **$2,000** | **$7,200** |
| **Training** | Training to use and understand Software, Databases and Information | **No Charge** | **No Charge** |
| **Enhancements** | OCONUS Data | **No Charge** | **No Charge** |
| | Alaska & Hawaii Regions Including Available Commissaries | **$4,000** | **$15,000** |
| | Custom Aggregates for DeCA Class of Commissaries and Zones | **$1,500** | **No Charge** |
| | Display Compliance Service | **No Charge** | **No Charge** |
| | Annual Top To Top Meeting with DeCA Management | **No Charge** | **No Charge** |
| | **TOTALS:** | **$110,868.00** | **$416,562.00** |

**TOTAL** (CLIN's 0001 & 0002): **$527,430.00**

## STATEMENT OF WORK

The subscription should provide for both short and long-term access to a contractor's automated database containing information relative to sales/movement data. The database shall include sales/movement data for all DeCA commissaries within the continental United States (CONUS - defined as the 48 contiguous States), in addition to comparable sales/movement data from commercial grocery stores within the same geographical areas.

The access will be utilized by the DeCA personnel, principally within the Marketing Business Unit (MBU), to accomplish such things as market research, generate ad hoc reports, and validate vendor presentations. The proposed hardware/software solution must include a user friendly drive engine that will allow for significant data manipulation and report building capabilities by DeCA personnel.

As a minimum, the access should enable the operator to generate reports based on any number of parameters, to include, but not limited to, DeCA REGIONS (Eastern Region-Northern Area, Eastern Region-Southern Area, Midwest Region, Western Region-Northern and Western Region-Southern), PRODUCTS (Departments, Categories, Sub-categories, Brands, UPC's, etc.), MARKETS (Food & Mass Merchandise) and TIME PERIODS.

The proposal should identify all technical and pricing variations associated with providing a complete turn-key operation (including any necessary hardware, software, communication requirements, licenses, etc.) for the term of the resulting contract. The proposal should also address the initial and follow-up training on the system that is to be provided by the contractor. There is no need for any contractor-provided services other than those required for initial and follow-up training. In addition to the minimum requirements set forth above, the following additional enhancements (or portions thereof) and related pricing should be addressed by the offeror, if available:

(1) the inclusion of sales/movement data for Alaska & Hawaii DeCA commissaries & comparable commercial grocery stores;
(2) the inclusion of sales/movement data for all other DeCA stores outside of the CONUS;
(3) inclusion of the market for DRUG categories;
(4) expansion of the on-line access to multiple users (not to exceed 30);
(5) any additional features and/or functions that the offeror feels may be of interest to DeCA.

PLACE OF PERFORMANCE: The end item(s) will be placed and operated within the areas of the DeCA Headquarters or its related agency facilities at or near Fort Lee, Virginia. The contractor shall be responsible for all effort, resources, and costs associated with making the system fully operational at its end destination.

CANCELLATION: CLIN # 0002 may be terminated at any time by the Government by providing 90 days written notice to the contractor, without cost over and above the prorated fee for any used portion of that CLIN.

DEFENSE COMMISSARY AGENCY
HEADQUARTERS
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

Contracting Division

January 21, 2004

Mr. Tom Speicher
Empower IT Inc
4800 Montogomery Lane, Suite 700
Bethesda, MD 20814

Dear Mr. Speicher:

In accordance with the terms and provisions of the Scanner Data Subscription Agreement, you are hereby provided notice of the Government's intent to exercise the second option period of April 14, 2004 through April 13, 2005 for the sale of DeCA's raw product movement data.

Per paragraph 1 of the Subscription Agreement, the annual subscription price for the second option period has been calculated based on the annual average of the Consumer Price Index (CPI) for 2003, which results in a 4.1 percent increase over option one's (1) price. Applying the increase results in the subscription price increasing to **$773,394.00 per year** payable in quarterly installments of **$193,348.50**.

As a reminder, please note that payments for this data are due at or before the beginning of each quarter. The quarters under this agreement are defined as follows:

| | | | |
|---|---|---|---|
| 1st quarter | 14Apr04 – 13Jul04 | 3rd quarter | 14Oct04 – 13Jan05 |
| 2nd quarter | 14Jul04 – 13Oct04 | 4th quarter | 14Jan05 – 13Apr05 |

Quarterly payments shall be mailed to:

Defense Commissary Agency
CBU, CICDS ATTN: George W. Herndon, III)
1300 E Avenue
Fort Lee, VA 23801-1800

If you have any questions, please contact George Herndon at (804) 734-8020 or the undersigned at (804) 734-857.

Sincerely,

John P. Lavinus III
Contracting Officer

DEFENSE COMMISSARY AGENCY
HEADQUARTERS
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

January 23, 2003

Ms. Debra Smith
Empower IT
4800 Montgomery Land, Suite 700
Bethesda, MD 20814

Dear Ms. Smith:

In accordance with the terms and provisions of the Scanner Data Subscription Agreement, you are hereby provided notice of the Government's intent to exercise the first option period of April 14, 2003 through April 13, 2004 for the sale of DeCA's raw product movement data.

Per paragraph 1 of the Subscription Agreement, the annual subscription price for the first option period has been calculated based on the annual average of the Consumer Price Index (CPI) for 2002, which results in a 1.6 percent increase over the Base Year's price. Applying the increase results in the first option period subscription price increasing to **$756,006 per year** payable in quarterly installments of **$189,001.50**.

As a reminder, please note that payments for this data are due at or before the beginning of each quarter. The quarters under this agreement are defined as follows:

| | | | |
|---|---|---|---|
| 1st quarter | 14Apr03 – 13Jul03 | 3rd quarter | 14Oct03 – 13Jan04 |
| 2nd quarter | 14Jul03 – 13Oct03 | 4th quarter | 14Jan04 – 13Apr04 |

Quarterly payments shall be mailed to:

Defense Commissary Agency
CBU, CICST (ATTN: Melissa Rios)
1300 E Avenue
Fort Lee, VA 23801-1800

If you have any questions, please contact Melissa Rios at (804) 734-8680 or the undersigned at (804) 734-8548.

Sincerely,

John P. Lavinus III
Contracting Officer

# DEFENSE COMMISSARY AGENCY
## SCANNER DATA
## SUBSCRIPTION AGREEMENT

1. Empower IT, Inc. (hereinafter referred to as subscriber), is hereby granted a five-year license to use the Defense Commissary Agency (DeCA) raw product movement data (hereinafter referred to as Data) generated by the front end cash register systems used in the commissaries operated by DeCA worldwide. The payment for this subscription shall be $744,100 for the Base Year of April 14, 2002 through April 13, 2003, with payments of $186,025.00 due at or before the beginning of each quarter, unless earlier canceled as allowed by paragraph 12 of this agreement. Base Year price has been escalated from the previous license agreement based on the CPI for all Urban Consumers (CPI-U) using the non-adjusted U.S. city average for all items (with a base period of 1982-84 equaling 100).

   Each subsequent annual subscription price will be determined using the annual average of this CPI for the preceding year (for example, the change in subscription price for scanner data in 2003 will be based on the annual average of the above-specified CPI for 2002). Access to the CPI data is available on-line by going to the Bureau of Labor Statistics home page at: http://www.bls.gov or by written request to: Office of Publications, Bureau of Labor Statistics, 2 Massachusetts Avenue NE, Room 2850, Washington, DC 20212-0001.

   Subscribers will be notified in writing of the new subscription price no later than February 1st of each year. In the event of a negative CPI, subscription prices will be adjusted downward no lower than the cost of the Base Year price of $744,100.

2. DeCA retains all ownership, right, and title to the Data itself.

3. Data subject of this license consists of a listing by individual commissary stores of the Department of Defense Activity Address Code (DODAAC), Universal Product Codes (UPC), unit price and number of units sold by day of sale, item description, brand name and Reason Code Activity.

4. Payment by money order, company check, certified check (if other than a company check is issued) or cashier's check made payable to "Defense Commissary Agency" must be received before Data will be provided. Payment is to be submitted to the following address:

   Defense Commissary Agency
   CBU, CICST (Attn: Melissa Rios)
   1300 E Avenue
   Fort Lee, VA 23801-1800

The subscribers will be notified of any change in the remit to address or procedures.

5. The terms of this agreement shall apply to the subscriber, its agents, assigns, successors in interest, including those liabilities transferred by merger, consolidation or acquisition (even if the successor is another subscriber). This agreement shall be incorporated into any such transaction document in whole.

6. Subscribers receiving the Data from DeCA shall not release or sell that Data to any other person, entity or association.

7. Subscribers receiving Data shall not release or sell reports based on the Data that reflects units sold by individual stores to any person, entity or association other than interested manufacturers and suppliers of resale products.

8. Data will be provided in electronic format, and made available, in daily increments consolidated into electronic files, for pick-up on a weekly basis on the Thursday after the last day of the previous week, excluding Acts of God. DeCA will place the Data at a specified location on the DeCA server and shall make it available for a period of 20 calendar days. Pick-up of the Data will be the sole responsibility of the subscriber. Failure to make the data available on Thursday, excluding Acts of God, shall entitle the subscriber to a subscription credit for that entire one weeks' reporting period of data.

9. Any misuse of the Data in violation of the license provided by this subscription agreement will constitute grounds for the immediate revocation of the license and cancellation of this subscription. If canceled under this agreement, subscribers will not receive any pro-rata refund.

10. DeCA warrants that for each reporting period, the Data provided will reflect a minimum of 93% of the stores with POS-M systems capable of reporting POS-M Data for that period. No warranty is made or provided for the Data from each individual store or aggregate of the individual Data elements. Should the Data provided fail to meet the 93% requirement, DeCA shall credit the subscriber at the next billing cycle with an amount that reflects the weekly prorated subscription dollar value for the number of stores below the 93% minimum. All other warranties either express or implied are excluded under this agreement.

11. The base period of this subscription shall be for the period of April 14, 2002 through April 13, 2003. The license agreement shall continue uninterrupted on a yearly basis until April 13, 2007 (a total period of five years), providing subscriber does not cancel this agreement at any time by providing written notice to DeCA.

12. Notwithstanding the above, the subscriber or DeCA may cancel this agreement at any time with no less than 90 days written notice to the other party.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Signature by an authorized official of the firm completing this subscription and the signature of the authorized DeCA official shall constitute agreement by the subscriber and DeCA to be bound by the terms and conditions specified herein.

Debra Smith, President — Dated this 7th day of February 2002
(Signature and Title of Authorized Firm Official)

John P. Lavinus — Dated this 7th day of February 2002
John P. Lavinus III
Contracting Officer