# In the United States Court of Federal Claims

No. 99-194C
(September 20, 2004)

* * * * * * * * * * * * * * * * * * * * * * *

MARKETING and MANAGEMENT INFORMATION, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * * *

Contracts; Brooks Act; Motion *in Limine*; Right to Damages Even in Absence of Appropriated Funds for Performance; Application of CDA to Barter Contract.

*Charles J. Cooper*, Washington, D.C., for the plaintiff. With him on the briefs were *Vincent J. Colatriano, Derek Shaffer, Nikki Chtaini*, of counsel.

*Sheryl Floyd*, Commercial Litigation Branch, Civil Division, Department of Justice, for the defendant. With her on the briefs were *Thomas D. Rathgeb* and *Elliott Clark*, Office of General Counsel, Defense Commissary Agency.

<u>OPINION</u>

BRUGGINK, *Judge*.

This case arises out of a contract awarded by the Defense Commissary Agency ("DCA") to plaintiff, Marketing and Management Information, Inc. ("MMI"), on October 26, 1995, to purchase and process scanner data collected by military commissaries. It is the termination of that contract which is in dispute. In this court's prior opinion, *Marketing & Management Information, Inc. v. United States*, 57 Fed. Cl. 665 (2003), we ruled that the Brooks Automatic Data Processing Act ("Brooks Act") did not apply to the contract and thus the contract was not void *ab initio*, that the government was not entitled to terminate the contract for convenience, and that the government did not act in bad faith when it cancelled its solicitation. We went on to hold that, in the absence of the

power to terminate for convenience, "the government's termination constituted a breach." *Id.* at 675. The issue of relief was not addressed. Trial is currently set for November 2, 2004.

Pending are the parties' motions *in limine* on four issues: when the breach of contract occurred, whether the two option years on the contract should be included for purposes of calculating damages, whether plaintiff is entitled to recover interest on any damages awarded, and whether plaintiff's proposed expert witness, Mr. Kenneth Metcalfe, is qualified to testify as to damages. Oral argument was held on September 9, 2004. For reasons set out below, we conclude that the contract was breached on September 30, 1996, that plaintiff is barred as a matter of law from asserting damages flowing out of the two option years, that plaintiff is entitled to interest on any damage award, and that the qualifications of Mr. Metcalfe will be determined during trial. In addition, defendant raised certain defenses in its motion *in limine*, which, although more properly the subject of a motion for summary judgment, we address below.

## BACKGROUND

DCA, an agency of the Department of Defense charged with operating military commissaries, issued Request for Proposal ("RFP") DCA01-94-R-0068 on June 1, 1995, for a sales contract pursuant to which DCA would release product movement sales data from its commissaries to the contractor in exchange for a share in the revenue generated by sale of that information and for "Analytical Support Services for Category Management." The RFP, therefore, contemplated no money flowing from the agency to the contractor.

The RFP provided for an award to a single contractor who would have the exclusive right to process and sell product movement sales data from the commissaries operated by DCA. The RFP called for a base term of three years with two one-year option periods at the election of DCA. The RFP intentionally omitted a termination for convenience clause.

MMI submitted a proposal to DCA in August 1995. A.C. Nielsen Company ("Nielsen"), Information Resources, Inc. ("IRI"), and Management Science Associates, Inc. ("MSA") also submitted proposals. DCA awarded the contract to MMI on October 26, 1995. Section B of the contract, which calculates the amount payable to DCA, refers to the basic contract period as running from January 1, 1996, to December 31, 1998. Section C, labeled as "Statement of Work," does not give specific dates for performance but simply

states that the basic contract period will be "three years" in order to defray the contractor's initial start-up costs. Section F, labeled "Deliveries or Performance," also states that the term of the contract runs from January 1, 1996, to December 31, 1998.

On November 6, 1995, Nielsen filed a protest at the General Services Administration Board of Contract Appeals ("GSBCA") challenging the award to MMI. IRI and MSA intervened to support the protest. In response to the protest, the contracting officer issued a stop work order on November 14, 1995. MMI was ordered to cease all work for "a period not to exceed 90 calendar days . . . or until this order is cancelled by the Contracting Officer." In order to avoid a disruption in services, a previous contract between MMI and the Air Force for processing raw scanner data was extended from December 31, 1995, to March 31, 1996.[1/]

In its protest, Nielsen argued that the solicitation was void because it failed to comply with the Brooks Act, which required federal agencies to obtain a delegation of procurement authority from the General Services Administration ("GSA") before acquiring automatic data processing equipment ("ADPE") or services. Brooks Automatic Data Processing Act, 40 U.S.C. § 759 (1995) (repealed 1996). On February 23, 1996, GSBCA held that the contract was, indeed, void *ab initio* because it was subject to, but did not comply with, the Brooks Act. DCA was directed to reassess the procurement in accordance with the Brooks Act and appropriate regulations.

MMI appealed GSBCA's decision to the Federal Circuit on March 21, 1996.[2/] During the pendency of that appeal, on September 30, 1996, DCA issued Amendment 0002 to the RFP cancelling the solicitation. DCA and the successful protestors then moved to dismiss MMI's appeal. On May 19, 1998, the Federal Circuit dismissed the appeal as moot and simultaneously vacated GSBCA's decision. *Mktg. & Mgmt. Info., Inc. v. Beale*, No. 96-1270, 1998 U.S. App. LEXIS 10199 (Fed. Cir. May 19, 1998).

---

[1/]Prior to the creation of DCA, the Air Force awarded a similar scanner data contract to MMI's predecessor, Military Audits of Market Information, Inc.

[2/]In our prior decision, we incorrectly stated that the appeal was filed on May 19, 1998.

On June 12, 1998, MMI sent a letter to the contracting officer expressing its desire to perform the contract as awarded and explaining that, because the Federal Circuit had vacated the GSBCA decision, there was no further bar to MMI performing on the contract. On the same day, however, DCA sent a "Notice of Termination" to MMI. In the notice, DCA explained that it considered the Federal Circuit's dismissal to have "recognized that . . . the agency's cancellation of the solicitation in September of 1996 constituted a withdrawal of the contract," and furthermore, that the cancellation of the solicitation effectively terminated the contract for the convenience of the government.

On September 10, 1998, MMI submitted a certified claim for approximately $44.6 million in damages. The contracting officer issued a final decision denying the claim on February 25, 1999. Plaintiff filed this action on April 2, 1999. The case was transferred to this judge in May 2001.

## DISCUSSION

*Date of Breach*

Defendant asks the court to determine that breach could not have occurred prior to June 12, 1998, when the contracting officer issued the notice of termination. The underlying argument is that no breach could have occurred between the time that GSBCA ruled the contract void *ab initio* (February 23, 1996) and the subsequent vacation of that decision by the Federal Circuit (May 18, 1998). In effect, defendant claims that the GSBCA decision shields it from a claim of breach prior to the time the Federal Circuit vacated the GSBCA decision. It follows, according to defendant, that only action taken after the GSBCA decision was vacated could constitute a breach.

Plaintiff's motion asks the court to find that the date of breach was April 1, 1996—the date the prior contract expired and, it alleges, performance under the new contract should have commenced. Defendant contests this date, claiming that the government continued to provide MMI with product-movement data on an exclusive basis until July 1996, when it began providing April 1996 data to third parties. Alternatively, plaintiff asks the court to rule that the breach occurred no later than September 30, 1996, when DCA cancelled the solicitation during the pendency of the Federal Circuit appeal. Plaintiff points out that defendant, in its briefing to the Federal Circuit, represented that the appeal was

moot because the cancellation of the solicitation on September 30, 1996, effectively terminated the contract for the convenience of the government.

We cannot accept defendant's contention that the breach occurred no earlier than June 12, 1998. Our prior decision is predicated on the assumption that a binding contract was formed on October 26, 1995, when defendant awarded the contract to plaintiff. We rejected defendant's arguments to the contrary. *See Mktg. & Mgmt. Info., Inc.,* 57 Fed. Cl. at 665. The contract cannot have been made void merely by the board decision. The decision only can have recognized the inherent validity or invalidity of the contract from the outset. The GSBCA decision, with which we disagreed, could not alter the legal consequences flowing from execution of that contract. The contract, in short, did not go into an interim period of non-existence merely because of the board's ruling, which was, in any event, vacated.

Although there had been no performance by the agency in the summer of 1996, it did not—during that period—indicate an intention not to perform the contract. The failure to perform up to that point in time was due to a 90-day stop work order staying performance during the bid protest and GSBCA's decision that the contract was void *ab initio*. Defendant did not assert during that time that it would not perform if the contract was valid. Moreover, the plaintiff made no declarations during that period that it considered the agency in breach. However, during the pendency of the appeal before the Federal Circuit, defendant cancelled the solicitation and went on to argue before the Federal Circuit that the appeal was moot because the cancellation effectively terminated the contract, whether it was valid or not.

Under these circumstances, the clearest indication of defendant's refusal to perform the contract is the cancellation of the solicitation on September 30, 1996. At that point it became apparent that the agency had no intention of performing and, we believe, put itself in breach.

Although not fully addressed in the briefing, at oral argument the parties identified another unresolved issue that affects the calculation of damages—the commencement date for the three-year base period of performance. Plaintiff contends that the contract contemplates a floating performance period which is triggered by its ability to commence work. It advocates a commencement date of April 1, 1996, when the extension period to the prior contract expired. Defendant contends that the commencement date is January 1, 1996, a date fixed by the contract. The issue has not been fully briefed; therefore, we decline to rule

on it and reserve the question for trial. We note parenthetically, however, that either party's inability to perform may be relevant with respect to when the three-year performance period would have run.[3/]

*Option Years*

Defendant asks the court to prohibit evidence of damages for any period of time after the three-year base period of performance would have ended because it was within the government's sole discretion to exercise the two option years. Plaintiff urges that the relevant contract period for purposes of measuring damages should include not only the three-year base period, but additionally the two one-year option periods.

In actions for breach of contract, damages are ordinarily limited to the natural and probable consequences of the breach. *N. Helex Co. v. United States*, 207 Ct. Cl. 862, 887, 524 F.2d 707, 720 (1975). Damages which are too remote, speculative, or consequential may not be recovered. *Id.* at 887-88; *see also LaSalle Talman Bank, F.S.B. v. United States*, 45 Fed. Cl. 64, 74 (1999), *aff'd in part, vacated in part*, 317 F.3d 1363 (Fed. Cir. 2003) ("Gains which do not flow proximately out of the undertaking of the contract itself are too speculative.").

Plaintiff's theory is that, had the agency not breached the contract, it is foreseeable that the agency would have exercised the two one-year option periods. In support, plaintiff points to the fact that defendant had exercised option years on prior contracts with plaintiff and, after refusing to perform on the contract at issue, the agency entered into a substantially similar contract with another company in 1999. Plaintiff also claims that it would have been more likely for defendant to use an incumbent contractor because accurate supply category management services can only be provided if the contractor possesses the prior year's data, which plaintiff possessed. Plaintiff asks the court to preserve the issue for trial.

We believe breach damages for the two option years would be inherently speculative. Defendant contends, and the plaintiff acknowledges, that where a

---

[3/]We are particularly concerned, however, with the government's contradictory arguments that, on the one hand, the breach did not occur until 1998 because the contract went out of existence for a time, and on the other, the three-year performance period commenced on January 1, 1996, and continued to run thereafter.

contract is renewable solely at the option of the government, the government is under no obligation to exercise the option. *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed Cir. 1988). In this case it was within the defendant's sole discretion to exercise the options years. Defendant would have been under no contractual obligation to extend performance.[4/] Because the defendant and plaintiff were only bound for the three-year base period, awarding damages for lost profits for the two option years would result in putting plaintiff in a better position than had the agency simply completed its three-year obligation.

*Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1380 (Fed. Cir. 2004), is directly on point. In that case, the contract had a one-year base period and four option years, two of which had been exercised. The Court of Federal Claims awarded damages on the contract's base year and the two exercised option years and rejected a damages claim on the two unexercised option years. The Federal Circuit affirmed. The plain import of the Federal Circuit's opinion is that, as a matter of law, damages for unexercised option years are unrecoverable. *See id.* ("[W]here a contract is renewable 'at the option of the government,' the government is under no obligation to exercise the option." (quoting *Gov't Sys. Advisors, Inc.*, 847 F.2d at 813)). Plaintiff is limited to damages flowing from the base period.

*Interest*

Defendant asks the court to rule that plaintiff is not entitled to interest on any damage recovery. Plaintiff's interest claim is brought under the Contract Disputes Act ("CDA").[5/] Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613

---

[4/] In *Government Systems Advisors, Inc.*, 847 F.2d at 811, the plaintiff argued that the contract placed restrictions on the government's freedom to decline the exercise of its option years. While the Federal Circuit found that the contract did not so limit the government's freedom, it suggests that such a restriction might give rise to a claim of damages for option years. *See id.* at 813. There is no such restriction in this case, however.

[5/]In vacating the GSBCA decision, the Federal Circuit stated: "We believe that all concerned are best served by restoring the matter in the first instance to the parties for a speedy and just settlement; and thereafter, should settlement fail, by resolution through the procedures of the Contract Disputes

(continued...)

(2000). Defendant asserts that the contract was not a "procurement of services" and thus does not come within the reach of the CDA.

Section 602(a) defines the scope of the CDA. The act applies to contracts entered into by an executive agency for:

> (1) the procurement of property, other than real property in being;
> (2) the procurement of services;
> (3) the procurement of construction, alteration, repair or maintenance of real property; or
> (4) the disposal of personal property.

41 U.S.C. § 602(a). In our prior opinion, as defendant points out, we held this contract was not a procurement within the meaning of the Brooks Act. *Mktg. & Mgmt. Info., Inc.*, 57 Fed. Cl. at 674. As plaintiff points out, however, § 602(a)(4) also makes the act applicable to contracts for the disposal of personal property.

Defendant conceded at oral argument that intangible property of the type at issue could be considered "personal property." We agree. "Personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1233 (7th ed. 1999). Commissary data is clearly personal property of the United States. *See City of Burbank v. United States*, 47 Fed. Cl. 261 (2000), *rev'd on other grounds*, 273 F.3d 1370 (Fed. Cir. 2001) (recognizing that electric power sold by the Department of Energy was "personal property" for purposes of the CDA).[6/]

---

[5/](...continued)
Act." *Mktg. & Mgmt. Info., Inc. v. Beale*, 1998 U.S. App. LEXIS 10199, *6 (Fed. Cir. May 19, 1998). Up until this point, the parties and the court have been operating under the assumption that the CDA applied to the contract in question.

[6/]Defendant asserted at oral argument that Congress contemplated that "disposal of personal property" in the statute would only involve the giving away of "surplus" property. Neither in that argument nor in the government's briefing was support cited for such a limitation. We note, in any event, that a plain reading of the statute permits no such limitations.

Defendant's primary argument is that the substance of this contract was not a true "disposal" of property within the meaning of the CDA because the contract, when viewed as a whole, amounts to the agency's acquisition of data through barter, not sale. Defendant cites *Florida Power & Light Co. v. United States*, 307 F.3d 1364 (Fed. Cir. 2002), for the proposition that it is inappropriate, in determining the applicability of the CDA, to fracture a contract into component pieces, only some of which might constitute a procurement or disposal; the substance of the contract is what is determinative. *Florida Power & Light* indeed stands for that proposition, but it is not relevant to defendant's argument here. In *Florida Power & Light*, the Federal Circuit found that the substance of the contract was the provision of services *by* the government. *Id.* at 1372-73. In its analysis, however, the Federal Circuit made it clear that the contract would have been characterized as one for the disposal of personal property had the government purchased uranium from a third-party and sold it to the customer utilities, as opposed to merely processing the customers' own material for a fee.

In this case, there is no question that defendant was disposing of personal property in the form of commissary data. Plaintiff, in return, was to pay defendant a minimum fee of $6.659 million and provide category management support services to defendant. The net result was the sale of commissary data. In fact, defendant's own motion so characterized the exchange: "The primary purpose of the Contract was to sell commissary scanner data to a company that would process the data, provide it to [defendant's] suppliers for a fee, as well as to [defendant], and to provide [defendant] with analytical support services." Def. Mot. in Limine at 25. We conclude that the CDA applied to the contract, and that any recovery will be subject to interest.

*Plaintiff's Expert Witness*

Defendant asks the court to prevent plaintiff's proffered expert witness, Mr. Kenneth P. Metcalfe, from offering expert opinions as to economic matters. It asserts that Mr. Metcalfe is an accountant by training and not qualified to criticize the elasticity of demand analysis offered by defendant's expert because Mr. Metcalfe has no formal education in that field of study. Plaintiff responds that a proposed expert witness may be qualified as a witness "by knowledge, skill, experience, training, or education." *See* Fed. R. Evid. 702. Plaintiff argues that Mr. Metcalfe is a Certified Valuation Analyst and has substantial experience analyzing and developing economic damage models

across a wide range of industries. We decline to rule on Mr. Metcalfe's expertise at this time. We prefer to evaluate Mr. Metcalfe's background in light of the precise questions presented at trial. Defendant may renew its objection at trial should plaintiff fail to establish its expert's qualifications or otherwise lay an adequate foundation.

*Availability of Damages*

Defendant offers a number of more general arguments directed at denying any recovery of damages: (1) plaintiff fails to state a claim upon which relief can be granted because the parties did not contemplate at the time of contracting that the defendant would pay any money to plaintiff in the event of defendant's breach, and (2) plaintiff waived any claim for damages for breach of contract (a) by knowingly and voluntarily entering into a contract with DCA despite the risk that the contract would be declared void *ab initio* and (b) by failing to challenge the sale of scanner data to other companies. While more properly the subject of a motion for summary judgment, we will address the arguments here.

Defendant first argues that plaintiff should be barred from recovering monetary damages because, at the time of contracting, it was the parties' intent that defendant would not expend appropriated funds in the event of breach. Specifically, defendant asserts that the contract provision stating "THIS CONTRACT DOES NOT INVOLVE THE EXPENDITURE OF ANY APPROPRIATED FUNDS BY THE U.S. CONGRESS" should be interpreted as barring plaintiff from recovering monetary damages. Defendant claims that the lack of a termination for convenience clause in the contract is further indication of the parties' intent that plaintiff would not recover money damages in the event of defendant's breach.

Plaintiff responds that the argument is untimely and, in any event, at odds with our earlier decision on liability. Alternatively, addressing the merits of defendant's argument, plaintiff asserts that the contract provision cited by defendant is taken out of context and refers to the fact that the parties did not intend appropriated funds to be expended during performance of the contract. Moreover, plaintiff contends that the lack of a termination for convenience clause actually undermines defendant's argument because it shows that the parties did not intend to limit the government's liability if the contract was prematurely terminated.

We decline to address the question of untimeliness and instead go to the merits of defendant's argument. We agree with plaintiff that defendant's argument reads the non-appropriated funds clause out of context. Section B, where the clause appears, does not address possible remedies for breach. It addresses the performance of the parties. It cannot be read as a limitation on liability. As to defendant's argument drawn from the absence of a termination for convenience clause, we note that its current position is inconsistent with its prior claim that a termination for convenience clause should be read into the contract. In any event, even if it was the subjective intent of the government that the absence of such a clause would insulate it from liability in the event of a breach, it was not the intent of the plaintiff, and we must interpret the contract "without regard to the subjective unexpressed intent of one of the parties." *ITT Arctic Servs., Inc. v. United States*, 207 Ct. Cl. 743, 752, 524 F.2d 680, 684 (1975). A private party is entitled to seek monetary damages for breach of contract even if the contract calls for a bartered exchange of goods and services. Restatement (Second) Contracts § 346. We therefore reject defendant's argument. Plaintiff may seek damages.

Defendant's second challenge to any recovery is that plaintiff waived its right to damages by "knowingly and voluntarily entering into a contract with significant ADPE requirements without the agency's seeking approval of GSA." Def.'s Mot. in Limine at 14. In other words, according to the government, plaintiff assumed the risk that GSBCA would erroneously declare the contract void *ab initio*, thereby prompting the agency's non-performance.

Defendant's argument is without merit. There is nothing in the record that would support an intentional waiver by plaintiff of its claim that the government would be in breach in the event of non-performance. The argument is particularly peculiar in view of the court's prior ruling that the agency and the plaintiff were both ultimately correct—the contract indeed was not subject to the Brooks Act. Defendant would have the court hold that plaintiff was to make a contrary assumption, namely that the contract would be declared void, despite the agency's assurances that the Brooks Act did not apply. We are not prepared to rule that a bidder should refuse to participate in a solicitation on the off chance that the contract might, erroneously, be declared void.

The cases defendant cites are inapposite. They involve contractual waiver or non-compliance with procedural rules, neither of which circumstance is applicable in this case. *See Seaboard Lumber Co. v. United*

*States*, 903 F.2d 1560 (Fed. Cir. 1980) (contractual waiver to jury trial); *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637 (Fed. Cir. 1989) (contract provision limiting statutory right to present termination of convenience claim upheld on waiver grounds); *EDP Enters., Inc. v. United States*, 56 Fed. Cl. 498 (2003) (injunctive relief in post-award bid protest denied because protester not in compliance with GAO timeliness rules).

Nor do we agree with defendant's final assertion that plaintiff waived its claim to collect damages for the sale of its scanner data to third-parties by failing to challenge DCA when, during the appeal to the Federal Circuit, the agency attempted to satisfy part of its needs by announcing a spot bid auction in May 1996. Plaintiff sought an injunction in district court in September 1996 challenging DCA's authority to sell its April 1996 data to third parties in July and August 1996. Moreover, we agree with plaintiff that the victim of a breach is not required to bring any suit other than a breach of contract action in order to preserve its legal rights. Plaintiff has not waived its right to seek damages.

## CONCLUSION

For the reasons set out above, plaintiff's motion *in limine* is granted in part and denied in part. Defendant's motion is granted in part and denied in part. The matter remains set for trial to commence on November 2, 2004.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge